EDWARD M. MEYER, Plaintiff-Appellant, *v.* WILLIAM M. LOGUE *et al.,* Defendants-Appellees.

First District (5th Division)    No. 80-1609

Opinion filed September 25, 1981.—Rehearing denied November 6, 1981.

George B. Collins and Paula M. Uscian, both of Collins & Amos, of Chicago, for appellant.

John R. Fielding, of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff Edward Meyer brought this action to enforce an oral contract involving the sale of securities. The trial court granted defendants' motion for summary judgment, holding that the alleged agreement was unenforceable under the relevant Statute of Frauds. (Ill. Rev. Stat. 1979, ch. 26, par. 8—319.) On appeal, plaintiff contends that the trial court erred in granting summary judgment because he raised these genuine issues of material fact: (1) whether the parties entered a valid oral contract and (2) whether plaintiff's alleged performance of this contract removes the Statute of Frauds barrier. We reverse and remand.

The following information is derived from the pleadings and plaintiff's deposition.

In August of 1973, plaintiff owned 20 percent of the outstanding stock in both the Brock Tool Company and Brock Equipment Company. The Brockschmidt family owned the balance of stock in each corporation. At that time, the total worth of Brock Tool was approximately $900,000. Plaintiff had worked for both companies for many years and when the Brockschmidts decided to sell their 80 percent interest in Brock Tool, they gave plaintiff a veto power over any potential purchasers of their interest. This was important to plaintiff because he wished to remain with the company as its chief executive officer.

Initially, the Brockschmidts and plaintiff negotiated with a party other than defendants. Based on the $900,000 valuation of the corporation, the Brockschmidts were to receive $720,000 for their 80 percent interest in the company. During this time, however, defendant Logue learned of the negotiations and expressed interest in buying the company. Plaintiff told the Brockschmidts that he would prefer dealing with Logue rather than the prior party because Logue assured plaintiff he would be expected to stay on and run the company. Logue and the other defendants planned to borrow money to purchase the Brockschmidts' interest. To facilitate the transaction, plaintiff agreed to subordinate his interest in Brock Tool through a reorganization of the company's stock structure. This would allow defendants to purchase the controlling interest in the company for a nominal amount and pay the Brockschmidts with the bank loan, which was secured by the assets of the corporation. In return, defendants agreed

to purchase plaintiff's interest in Brock Tool at the same rate as they paid the Brockschmidts.

According to plaintiff, the negotiations between defendants, the Brockschmidts and plaintiff culminated in the following agreement: (1) plaintiff would sell his interest in Brock Equipment Company to the Brockschmidts for $5,000 and an additional 20 percent of Brock Tool stock, so he would acquire 40 percent of Brock Tool; (2) plaintiff would consent to Brock Tool borrowing $560,000, using its own assets as collateral, to purchase and retire the Brockschmidts' interest in the company; (3) plaintiff would consent to a reorganization of Brock Tool stock into two shareholder classes, A and B. Plaintiff's 40 percent interest in Brock Tool would be decreased from 10,000 to 100 shares of Class A. Ten thousand shares of Class B would be issued, with plaintiff paying $4,000 cash for 4,000 shares, and defendants paying $6,000 cash for 6,000 shares. This would give defendants control of the corporation. (4) Plaintiff would retain the right, on demand, to require defendants to purchase his Class A shares in Brock Tool. These shares represented his 40 percent interest in the corporation and defendants were to purchase them at the same basis paid to the Brockschmidts for their interest. This amounted to $360,000, to be paid to plaintiff in a manner favorable in its tax consequences.

This alleged agreement was never reduced to writing.[1]. Defendants, however, assured the Brockschmidts when they concluded the sale that they had an "understanding" with plaintiff.

When the ownership of the Brockschmidts' interest in Brock Tool had been transferred to defendants and the company had been reorganized, plaintiff met with defendant Hillsman, an accountant, to discuss the method of paying plaintiff for his Class A stock. Over a period of months, different methods of payment were considered, but Hillsman did not want to put anything in writing until he fully considered the options.

Plaintiff remained with Brock Tool Company as its president until April 7, 1975, when he resigned.

On June 18, 1975, plaintiff filed a complaint to enforce his alleged right to be paid $360,000 under the agreement. Defendants' answer denied the existence of any oral agreement. Defendants also filed a motion for summary judgment based on the Statute of Frauds (Ill. Rev. Stat. 1979, ch. 26, par. 8—319). In granting defendants' motion, the trial court stated, in its written order:

---

[1] According to plaintiff, the agreement was not put in writing because Brock Tool needed to borrow money from banks to retire the Brockschmidts' stock. If the corporation had assumed the obligation to repurchase plaintiff's shares, the bank loan would have been prevented because of this additional liability on the company's balance sheet. Consequently, the agreement to repurchase plaintiff's shares was made between plaintiff and the individual defendants.

"THE COURT FINDS that the following facts are undisputed:

1. That the Complaint in this cause is based upon an alleged contract for the sale of stock by Plaintiff to the several Defendants.

2. There is no written instrument evidencing the purported sale of said securities.

3. That the Defendants in their Answer and throughout discovery conducted by Plaintiff deny that any contract existed for the purchase by them of Plaintiff's stock.

THE COURT FURTHER FINDS:

That the purported contract is not enforceable by way of action or defense pursuant to the provisions of the Uniform Commercial Code, Illinois Revised Statutes Chapter 26, Section 8—319. * * *"

Plaintiff appeals from this order.

Opinion

From the face of the order appears at least one disputed issue of fact: whether the parties entered into an oral agreement involving the sale of plaintiff's stock. Plaintiff also raises the doctrine of complete performance, to take the alleged contract out of the Statute of Frauds. The ultimate fact issue, therefore, may be framed as whether the parties formed a contract under which plaintiff performed all his obligations and, by so doing, triggered defendants' obligation to pay plaintiff $360,000. Since genuine issues of material fact defeat a motion for summary judgment (Ill. Rev. Stat. 1979, ch. 110, par. 57; *McCann v. Bethesda Hospital* (1980), 80 Ill. App. 3d 544, 400 N.E.2d 16), we must reverse the trial court's order unless the Statute of Frauds bars enforcement of the purported contract as a matter of law.

Section 8—319 (Ill. Rev. Stat. 1979, ch. 26, par. 8—319) provides:

"A contract for the sale of securities is not enforceable by way of action or defense unless

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within 10 days after its receipt; or

(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

We agree with defendants and the trial court that the facts of this case are not covered by the explicit language of the statute. If we narrowly construe the provision, therefore, we could affirm the trial court's judgment without reaching the factual issues. We believe, however, that such a construction of section 8—319 would be unduly restrictive and inconsistent with pertinent case law.

■■ In Illinois, oral contracts are not considered void (*e.g., Gaffney v. McCarron* (1977), 45 Ill. App. 3d 944, 360 N.E.2d 508), although they may be unenforceable if they are subject to a Statute of Frauds provision. The legislature has enacted such provisions for contracts that cannot be performed within a year (Ill. Rev. Stat. 1979, ch. 59, par. 1), contracts for the sale of an interest in land (Ill. Rev. Stat. 1979, ch. 59, par. 2), contracts for the sale of goods (Ill. Rev. Stat. 1979, ch. 26, par. 2—201), and contracts for the sale of securities (Ill. Rev. Stat. 1979, ch. 26, par. 8—319). None of these statutes explicitly provide that full performance by one party operates to take the oral contract out of the Statute of Frauds; however, case law fully supports this result. See *Mapes v. Kalva Corp.* (1979), 68 Ill. App. 3d 362, 386 N.E.2d 148 (executed oral employment contract withstands Statute of Frauds defense, especially where all that remains to be done by the other party is payment of money); *Thomas v. Moore* (1977), 55 Ill. App. 3d 907, 370 N.E.2d 809 (oral contract for sale of real estate is removed from Statute of Frauds where purchaser pays full consideration, takes possession of the land or makes valuable improvements thereon); *Lund v. E. D. Etnyre & Co.* (1968), 103 Ill. App. 2d 158, 242 N.E.2d 611 (where one party has fully performed oral agreement, other party is estopped to rely on the Statute of Frauds, even though the oral contract violates the statute); *Hills v. Hopp* (1919), 287 Ill. 375, 122 N.E. 510 (oral contract for sale of corporate stock was enforceable because plaintiff performed all of his obligations in reliance on it).

The rationale of this unilateral full performance concept is sound; if one party, in reasonable reliance on the contract, performs all of his obligations and cannot be adequately compensated through restitutionary means, the other party should not be permitted to rely on the Statute of Frauds as a way to avoid his reciprocal obligations. (*Barrett v. Geisinger* (1893), 148 Ill. 98, 35 N.E. 354; see *Brunette v. Vulcan Materials Co.* (1970), 119 Ill. App. 2d 390, 256 N.E.2d 44.) Statutes of Frauds are designed to prevent false claims by requiring a writing to evidence the parties' contractual intent. (See Ill. L. & Prac. *Statute of Frauds* §91 (1956).) When one party fully performs his part of the alleged oral

contract, however, the courts recognize that this very performance strongly indicates the existence of a contract. (See 2 Corbin on Contracts §430 (1950); *Brunette v. Vulcan Materials Co.*) Such performance tends to minimize the dangers that the Statute of Frauds were designed to prevent. Conversely, where an alleged contract is purely executory, neither side having performed, application of the Statute of Frauds is justified by the attendant proof problems and the increased likelihood of perjury.

With these general principles in mind, we turn to the specific statute in question, section 8—319. We have found no Illinois cases directly on point. However, a case decided before the enactment of the current statute supports plaintiff's position. In *Hills v. Hopp* (1919), 287 Ill. 375, 122 N.E. 510, the defendant president of a corporation offered stock to plaintiff and other shareholders, promising to repurchase the stock if they became dissatisfied with it. Plaintiff did become dissatisfied and subsequently sued defendant, who refused to repurchase the stock. The Illinois Supreme Court rejected defendant's Statute of Frauds defense, holding that plaintiff had fully performed under the contract and, because it could be performed within a year, it was not barred by the Statute of Frauds.

■■ In the pending case, plaintiff makes an argument similar to that approved in *Hills*. He alleges that, in reliance on defendants' express oral agreement to pay him $360,000 for his interest in Brock Tool, he let his shares be substantially reduced, let a valuable business entity be encumbered by the loan, and allowed defendants to acquire a controlling interest in the company for a nominal sum. Defendants' persistent refusal to pay him necessitated this lawsuit. While we express no opinion on the ultimate merits of plaintiff's claims, we believe that the case law supports his position that the oral agreement, if performed as alleged, would not be barred by the Statute of Frauds.

Notwithstanding our conclusion, we must address one remaining question regarding the construction of section 8—319. During oral argument, defendants suggested for the first time that even if plaintiff's allegations were true, his performance would be inadequate as a matter of law. This theory is premised on subsection (b) of the statute, which provides that a contract for the sale of securities is not enforceable unless "*delivery* of the security has been *accepted* or payment has been made, but the contract is enforceable under this provision *only to the extent of such delivery or payment.*" (Emphasis added.)

Without offering any supporting authorities or reasoning, defendants imply that because plaintiff failed to actually "deliver" his stock in Brock Tool and defendants refused to accept it, plaintiff's performance did not come within subsection (b). Under this theory, the unilateral full performance doctrine would be precluded or superseded by the performance described in subsection (b).

The logic and fairness of this result is questionable. Indeed, we do not

believe that subsection (b) applies to the circumstances of this case. For clarity of analysis, however, we will briefly explain why we reject defendants' proposed construction of this provision.

Section 8—319 is part of the Uniform Commercial Code (UCC), as incorporated into chapter 26 of the Illinois Revised Statutes. Section 8—319 is closely patterned after the Statute of Frauds provision regarding contracts for the sale of goods. (Ill. Rev. Stat. 1979, ch. 26, par. 2—201.) Under prior law, the Uniform Sales Act, the Statute of Frauds could not be avoided by a writing unless it contained every essential term of the contract. (Ill. Ann. Stat., ch. 26, par. 2—201, Illinois Code Comment, at 109 (Smith-Hurd 1963).) Section 2—201 of the UCC has greatly liberalized these requirements by allowing the writing to suffice as long as it indicates the parties' contractual interest, states a quantity term, and is signed by the party against whom enforcement is sought. Moreover, section 2—201 permits enforcement of an oral sales contract if a confirming memorandum, sufficient against the sender, is sent to the party against whom enforcement is sought and that party fails to object in writing within 10 days after receiving the memo. (Ill. Rev. Stat. 1979, ch. 26, par. 2—201(2); see par. 8—319(c).) Also sufficient to remove a sales contract from the Statute of Frauds is a defendant's judicial admission that a contract was made for the sale of a stated quantity of goods at a stated price. (Ill. Rev. Stat. 1979, ch. 26, par. 2—201(3)(b); see par. 8—319(d).) Finally, section 2—201(3)(c), which corresponds to subsection (b) of 8—319, acknowledges that the parties' delivery and acceptance of goods can substitute for the required writing. This performance, however, only validates the contract for the goods actually accepted or for which payment has been made and accepted. (Ill. Ann. Stat., ch. 26, par. 2—201, Uniform Commercial Code Comment, at 114 (Smith-Hurd 1963).) Thus, receipt and acceptance of goods or payment is viewed as an "unambiguous overt admission" by both parties that a contract actually exists. In contrast to the former law under the Uniform Sales Act, however, such performance cannot validate the *entire* transaction, but only the executed portion. (Ill. Ann. Stat., ch. 26, par. 2—201, Illinois Code Comment, at 113 (Smith-Hurd 1963).) This is consistent with the fraud-preventing purpose of all Statutes of Frauds.

As this summary indicates, the UCC Statutes of Frauds proscribe only those transactions that are incapable of verification by a writing or other comparable substitute. Sections 2—201(3)(c) and 8—319(b), we believe, clearly reflect the common law concept that performance is evidence of a contract's existence. We do not, however, agree with defendants that section 8—319, by addressing specific exceptions to the requirement of a writing, negates the well-established unilateral full performance doctrine previously discussed. As a judicially created concept that is not expressly embodied in any of the Statutes of Frauds, it is flexible enough to be

extended to contracts for the sale of securities. Whether it is viewed as an exception to the Statute of Frauds or as an equitable remedy in the nature of an estoppel, the application of this doctrine is justified under the circumstances of this case. Indeed, the UCC expressly preserves all principles of "law and equity" that are not "displaced by the particular provisions of this Act * * *." (Ill. Rev. Stat. 1979, ch. 26, par. 1—103.) We conclude that allowing plaintiff to present evidence of his claim would not violate section 8—319.[2]

We hold that plaintiff raised genuine issues of material fact regarding the existence and performance of the alleged contract. By disposing of the action through summary judgment, therefore, the trial court erred. Consequently we reverse the judgment and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.

---

[2] Our opinion is not intended to affect the normal broker-client relationships which involve the great volume of buy and sell orders executed over the telephone and subsequently confirmed in writing; all the protections afforded by section 8—319 remain intact.