**June ELLINGTON, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

No. IP 87–774–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 14, 1988.

Robert A. Garelick, Indianapolis, Ind., for plaintiff.

Howard E. Kochell, Indianapolis, Ind., for defendant.

## ENTRY

DILLIN, District Judge.

This cause is before the Court on a motion by defendant, Metropolitan Life Insurance Company (Metropolitan), for summary judgment on the complaint of plaintiff, June Ellington (Ellington), against it. For the following reasons, defendant's motion is denied.

### Background

Decedent Robert Ellington (decedent) was insured under a double indemnity policy providing group life insurance and accidental death benefits. Specifically, the accidental death portion of the policy covered Ellington for "bodily injuries [sustained] solely through violent, external and accidental means" which result in death. The group double indemnity policy which covered the decedent was provided by Metropolitan Life Insurance Company to participating employees of the Bemis Corporation. Plaintiff, June Ellington, the decedent's ex-wife, was the stated beneficiary of the decedent's double indemnity policy.

Decedent was shot to death during a disturbance at a bar in Terre Haute, Indiana, on April 25, 1986. Acting on Ellington's claim for life insurance and accidental death benefits, Metropolitan paid the full life insurance proceeds plus interest. Metropolitan denied the claim for accidental death benefits on November 13, 1986, stating that in order to recover "the death must be unforeseen and unexpected in the action which caused the death." Applying this objective intent test, Metropolitan denied benefits to Ellington on the ground that the decedent had been "the aggressor" in the barroom disturbance which led to his death.

Ellington then filed this lawsuit seeking damages for breach of the insurance contract in state court on June 23, 1987. The cause was removed to this court on the basis of federal subject matter jurisdiction under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, (1988). Although Metropolitan has consistently argued that the group insurance policy in question provides benefits under an ERISA plan, it has failed to submit a copy of the ERISA plan or a summary plan description. Further, Metropolitan has failed to provide this Court with any information regarding how the alleged Bemis ERISA plan is funded and whether the alleged Bemis plan establishes a trust fund. In addition, Metropolitan has failed to inform the Court of what duties it exercises regarding initial and final claims review under the terms of the alleged Bemis ERISA plan and whether the plan designates Metropolitan as a plan fiduciary or administrator.

After removal to this court, Metropolitan moved for summary judgment. In its motion, Metropolitan asks this Court to rule as a matter of law that Bemis established an ERISA plan under which Ellington's state law claim is preempted, that Metropolitan acted as a fiduciary under ERISA in denying Ellington's claim for accidental death benefits, that this Court may therefore reverse Metropolitan's claim denial only if it was arbitrary and capricious, and that Metropolitan did not err by failing to follow Indiana insurance law which requires insurance companies to apply a subjective intent standard in order to determine whether a death was accidental.

### Discussion

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). The burden of establishing the lack of any genuine issue of material fact is upon the movant, and all doubts are to be resolved against him. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218 (7th Cir.1984). If the moving party has met this initial burden and the nonmoving party claims the existence of a question of fact, the Court must then

determine whether a genuine issue has been established as to that fact. *Big O Tire Dealers*, 741 F.2d at 163. Summary judgment must be entered against the non-moving party where the nonmoving party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). "In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Court finds that genuine issues of material fact exist with regard to each of the four issues raised by defendant Metropolitan's motion for summary judgment.

## I.

Whether Bemis has established an ERISA plan:

First, Metropolitan argues that Ellington's state law claim is preempted by ERISA because the group life insurance policy under which Ellington is a beneficiary is an employee welfare benefit plan as defined by ERISA. Under ERISA, an employee welfare benefit plan is defined in pertinent part as follows:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) … benefits in the case of … accident … [or] death....

29 U.S.C. § 1002(1) (1988).

The Court is unable to conclude as a matter of law that Bemis established or maintained an employee welfare benefit plan under ERISA. The decedent was covered under a group insurance policy available to Bemis employees. However, "the purchase of insurance does not conclusively establish a plan, fund, or program" under ERISA. *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (8th Cir.1982) (en banc). In fact, Department of Labor regulations under ERISA expressly state that:

> [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1987).

The above regulation limiting the definition of an employee welfare benefit plan has been applied repeatedly by federal courts. *Credit Managers Ass'n v. Kennesaw Life & Acc. Insurance*, 809 F.2d 617 (9th Cir.1987) (employer can establish an ERISA plan "unless it is a mere advertiser who makes no contributions on behalf of its employees," citing § 2510.3–1(j)); *Donovan*, 688 F.2d at 1373 n. 11 (an ERISA plan "does not include group insurance if the sole functions of the employer are, without endorsing the program, to permit an insurer to publicize a program to employees, to collect premiums through payroll deductions, and remit the premiums … if the employer does not contribute premiums to the insurer or make a profit from the pro-

gram"); *Dodd v. John Hancock Mut. Life Ins. Co.*, 688 F.Supp. 564, 567 (E.D.Cal. 1988) (an ERISA plan "does not include a group life insurance policy if the employer merely advertises the program and makes no contributions on behalf of the employees or profit from the program"); *Shiffler v. Equitable Life Assurance Soc. of U.S.*, 663 F.Supp. 155 (E.D.Pa.1986) (employer met requirements of the regulation where it endorsed the insurance policy, provided employees with the opportunity to discuss the policy with their supervisors, and helped process claims); *Garrett v. Delta Air Lines, Inc., et al.*, 1978 Life Health & Accid. Ins. Cas.2d (CCH) 376 (N.D.Ind. 1978) (employer who provided insurance literature, forwarded applications for enrollment, assisted employees in submitting claims, and maintained a payroll deduction program, did not thereby endorse or establish an ERISA plan under § 2510.3–1(j)).

Furthermore, the Seventh Circuit has stated with regard to a companion regulation that "[t]he construction by the Department of Labor, which is entrusted with the enforcement of ERISA, is entitled to considerable weight." *Otto v. Variable Annuity Life Ins.*, 814 F.2d 1127, 1135 (7th Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988). Like § 2510.3–1(j), the companion regulation construed in *Otto* states that an "employee pension benefit plan" or "pension plan" does not qualify as an ERISA plan if the sole involvement of the employer is to permit annuity providers to offer their products and to remit annuity contributions to said providers. *Id.* (construing 29 C.F.R. § 2510–2(f)). Given that the sole involvement of the employer in the pension plan mirrored that described in § 2510–2(f), the court held that the "minimal, ministerial activities performed by plaintiff's employer" did not render the plan one "established or maintained" by the employer as required under ERISA. *Id.*

In the case at hand, Metropolitan has failed to bring forth sufficient evidence to demonstrate as a matter of law that the employer, Bemis, Inc., has established an ERISA plan by allowing employees to obtain double indemnity coverage through its group life insurance policy. The possibility that Bemis "is a mere advertiser who makes no contributions on behalf of its employees ... should be explored in an appropriate manner before summary judgment is employed. We must remember that the existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person." *Credit Managers Ass'n v. Kennesaw Life & Acc. Ins.*, 809 F.2d 617, 625 (9th Cir.1987) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)). For these reasons, the Court denies Metropolitan's motion for summary judgment on the issue of whether Bemis has established an ERISA plan.

II.

Whether Metropolitan is a fiduciary under ERISA:

Metropolitan argues that it acted as a fiduciary under ERISA in denying Ellington's claim for accidental death benefits. Under ERISA, "a person is a fiduciary with respect to a plan to the extent ... (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii) (1988). The Department of Labor has further refined this definition in the following regulation:

> To the extent that benefits under an employee benefit plan are provided by an insurance company ... the claims procedure pertaining to such benefits may provide for review of and decision upon denied claims by such company.... In such case, that company ... shall be the "appropriate named fiduciary" for purposes of this section.

29 C.F.R. § 2560.503–1(g)(2) (1987).

Courts have interpreted this regulation to mean that an insurer seeking the status of an ERISA fiduciary must provide evidence of its power to make final claims decisions under the terms of the ERISA plan. *Austin v. General American Life Insurance Co.*, 498 F.Supp. 844 (N.D.Ala. 1980); *Cate v. Blue Cross & Blue Shield,*

434 F.Supp. 1187 (E.D.Tenn.1977). As the court in *Austin* reasoned:

> The language of the regulation demonstrates that the insurance company is not necessarily a fiduciary by reason of providing contractual benefits, but rather is to be so considered if it, in addition, is given responsibility for reviewing *denied* claims. Not every insurer is a fiduciary for the purposes of ERISA; nor is it the case that merely by deciding whether to pay claims submitted by insureds the insurer is thereby subjected to the responsibilities of a fiduciary. The regulation relied on by General American makes it clear that the status of an insurer as a fiduciary is not automatic but rather turns on the provisions of the plan and of the agreement made by the insurer.

*Austin*, 498 F.Supp. at 846 (emphasis original); *Accord Cate*, 434 F.Supp. at 1190 ("But the [insurance] policy is not the plan itself.... In this case, [Blue Cross'] ... obligations to plaintiffs are defined by the contract it executed with the employer...."); 42 Fed.Reg. 27426, 27427 (1977) (The Department of Labor stated that fiduciary status under 29 U.S.C. § 1002(21)(A)(iii) depends on construction of "the terms of a particular [ERISA] plan regarding final decision on appeals from claim denials....").

A genuine issue of material fact remains regarding whether Metropolitan has been assigned the duties of a fiduciary under the alleged ERISA plan. Thus, this Court cannot rule as a matter of law that Metropolitan was acting as a fiduciary when it denied Ellington's claim for accident death benefits.

### III.

Whether the Court should review Metropolitan's denial of Ellington's claim under the arbitrary and capricious standard:

■ Metropolitan argues that as a matter of law this Court may overturn its claims denial only if its decision was arbitrary and capricious. However, genuine issues of material fact exist which preclude the Court from determining the applicable standard of judicial review as a matter of law.

The arbitrary and capricious standard, as applied in cases reviewing the decisions of ERISA fiduciaries, has its origins in the law of trusts and in cases reviewing the decisions of pension boards under the Labor Management Relations Act (LMRA). *Wardle v. Central States*, 627 F.2d 820 823–24 (7th Cir.), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Use of this deferential standard of review was premised on the impartiality of the fiduciary, as required under the law of trusts and the LMRA. *Van Boxel v. The Journal Company Employee's Pension Trust*, 836 F.2d 1048, 1051 (7th Cir.1987); *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134, 143–44 (3rd Cir.1987), *cert. granted*, —— U.S. ——, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988). For example, the LMRA required a pension board to be composed of an equal number of management and union representatives. *Id.*

However, a far less deferential standard of judicial review is required in situations where the trustee or fiduciary has a conflict of interest. *Bruch*, 828 F.2d at 143–44 (citing Restatement (Second) of Trusts § 187 (1959); *Brune v. Morse*, 475 F.2d 858, 860 n. 2 (8th Cir.1973)). Particularly in cases where the trustee acts for its own gain rather than for that of the beneficiaries, the Court is required to scrutinize more carefully the basis for the trustee's decision in order to determine whether it resulted from an improper conflict of interest:

> g. *Improper Motive:* The court will control the trustee in the exercise of a power where he acts from an improper even though not a dishonest motive, that is, where he acts from a motive other than to further the purposes of the trust. Thus, if the trustee in exercising or failing to exercise a power does so because of spite or prejudice or to further some interest of his own or of a person other than the beneficiary, the court will interpose. Although ordinarily the court will not inquire into the motives of the trustee, yet if it is shown that his motives were improper or that he could not have

acted from a proper motive, the court will interpose. In the determination of the question whether the trustee in the exercise of a power is acting from an improper motive the fact that the trustee has an interest conflicting with that of the beneficiary is to be considered.

Restatement (Second) of Trusts § 187(g) (1959).

Accordingly, in the context of an ERISA fiduciary, the arbitrary and capricious standard is "a range, not a point.... The greater the conflict of interest ... the less we defer to a denial of benefits that appears to be wrong." *Van Boxel*, 836 F.2d at 1052–53. Thus, in the case at hand, a genuine issue of material fact exists regarding whether Metropolitan was truly neutral or whether it had a conflict of interest. Once this factual issue is resolved, the Court may determine the appropriate standard of review by reference to two standards articulated by the Seventh Circuit:

(1) The very low standard applicable to arbitrators [whether the decision was completely unreasonable] ... would be used when circumstances were such as to make the company a neutral party in the decision by the trustees, or the trustees were neutral third parties rather than employees of the company, or half the trustees had been appointed by the union rather than the company. (2) Where none of these conditions obtained, and especially where the trustees had an actual conflict of interest, the "arbitrary and capricious" standard would be jettisoned in favor of de novo judicial review—the approach in *Bruch.*

*Van Boxel*, 836 F.2d at 1051.

Thus, this Court must await evidence regarding the structure of the alleged ERISA plan, which Bemis may have established through the services of Metropolitan, before determining the appropriate standard of review. Nevertheless, it is important to note that the potential for a conflict of interest is great in a situation where the insurance company itself benefits financially every time that it denies a claim under an unfunded ERISA plan, rather than preserving a trust fund for the sake of other beneficiaries by denying claims under an employer-funded plan. *See, e.g., Sixty–Five Security Plan v. Blue Cross and Blue Shield*, 583 F.Supp. 380, 388 (S.D.N.Y.1984) (Under the terms of an ERISA plan, the fiduciary, Blue Cross, was paid a certain percentage of the claims it had paid. Thus, Blue Cross had a conflict of interest since it had an incentive to overpay claims for its own gain.).

## IV.

Whether Metropolitan applied the proper definition of accidental death:

Metropolitan argues that since it applied an appropriate definition of "accidental death" when it denied Ellington's claim for benefits, this Court must uphold its decision under ERISA as a matter of law. Metropolitan applied an objective intent definition under which the death is not accidental if a reasonable person in the position of the decedent should have foreseen that his conduct would result in his death. Ellington disagrees, arguing that Metropolitan should have applied Indiana's subjective intent test under which the death was not accidental only if the decedent actually foresaw that death would result from his conduct and persisted in his conduct nonetheless. *Freeman v. Commonwealth Life Insurance Company*, 259 Ind. 237, 286 N.E.2d 396, 397–98 (1972) (interpreting identical policy language covering the decedent if the employee dies as a result of "bodily injuries effected solely through external, violent and accidental means"). Metropolitan responds that ERISA preempts the application of Indiana law regarding the interpretation of its group insurance policy.

To determine whether ERISA preempts Indiana insurance law interpreting the terms of group insurance policies, the Court must review the preemption provisions of ERISA and the United States Supreme Court's interpretation of these provisions in *Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

■ Turning to the statutes, ERISA contains a broad preemption provision stating that the act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). However, consistent with the McCarran–Ferguson Act, ERISA also excepts from preemption traditional state law regulating insurance in its "saving clause":

> (2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A) (1987). "State laws" for the purposes of ERISA preemption include "all laws, decisions, rules, regulations, or other state action having the effect of law of any state." 29 U.S.C. § 1144(c)(1). Accordingly, "state laws" include state decisional law as well as state statutes. *Tinsley v. General Motors Corp.*, 622 F.Supp. 1547, 1551 (N.D.Ind. 1985) (citing *Jung v. FMC Corp.*, 755 F.2d 708, 714 (9th Cir.1985)); *Helms v. Monsanto Co., Inc.*, 728 F.2d 1416, 1419–20 (11th Cir.1984). Thus, the Indiana Supreme Court's decision in *Freeman, supra,* is a state law for purposes of ERISA preemption analysis under 29 U.S.C. § 1144(c)(1).

■ ERISA's exception from preemption of state law is limited by the subsequent "deemer clause" which provides that an employee benefit plan shall not be deemed to be an insurance company for the purposes of state regulation. 29 U.S.C. § 1144(b)(2)(B) (1987). The essence of the deemer clause, when read in conjunction with the exception for state law, is that state laws which regulate insurance will apply to ERISA plans which purchase insurance from insurance providers. That is, insurance companies will not be able to avoid state regulation simply because their customer is an ERISA plan. However, state regulation will not apply to ERISA plans which are self-funded. That is, an ERISA plan will not be equated with an insurance company for purposes of state regulation simply because it provides insurance benefits. *Reilly v. Blue Cross &*

*Blue Shield of Wisconsin,* 846 F.2d 416, 425 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988).

In *Metropolitan Life Insurance Company v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the United States Supreme Court ruled that the ERISA saving clause excepts from ERISA preemption state laws that regulate the substantive terms of insurance contracts. Given the broad language of both the preemption and saving clauses of ERISA, the Court in *Metropolitan* set out a framework for determining whether a particular state law came within the saving clause provision excepting state laws which "regulate[ ] insurance."

■ Under the *Metropolitan* framework, a court must first determine whether a "common-sense" construction of the ERISA phrase "which regulates insurance" would include within the saving clause the state law in question. *Metropolitan,* 471 U.S. at 740–42, 105 S.Ct. at 2389–90, 85 L.Ed.2d at 742–44. In *Metropolitan,* the Court determined that a Massachusetts statute regulating the substantive terms of group insurance policies was a state law "which regulates insurance" under a common sense construction of ERISA:

> This common sense view [of the saving clause] ... is reinforced by the language of the subsequent subsection of ERISA, the "deemer clause," which states that an employee-benefit plan shall not be deemed to be an insurance company "for purposes of any law of any State purporting to regulate insurance companies, *insurance contracts,* banks, trust companies, or investment companies".... By exempting from the saving clause laws regulating insurance contracts that apply directly to benefit plans, the deemer clause makes explicit Congress' intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the saving clause. Unless Congress intended to include laws regulating insurance contracts within the scope of the insurance savings clause, it would have been unnec-

essary for the deemer clause explicitly to exempt such laws from the saving clause when they are applied directly to benefit plans. *Id.* (emphasis original) (construing 29 U.S.C. § 1144(b)(2)(B)).

This reasoning equally applies to the case at hand, which also involves a state law that regulates insurance contracts. Thus, a common sense view of the saving clause, read in conjunction with the deemer clause, suggests that Congress intended to preserve state regulation of the terms of Metropolitan's group life insurance policy.

Second, in interpreting the ERISA provision excepting state laws "which regulate insurance," the Court made use of criteria it had employed to interpret the phrase "business of insurance," which excepted state insurance regulation from federal preemption in the McCarran–Ferguson Act. *Id.* at 742–44, 105 S.Ct. at 2390–91, 85 L.Ed.2d at 742–43. The three criteria employed under the McCarran–Ferguson Act are: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Id.*

In the case at bar, all three criteria are met by Indiana's insurance law which requires that the accidental death provisions in life insurance policies be construed under a subjective intent standard. First, Indiana insurance law which requires that accidental death be defined under the subjective intent standard obviously regulates the shifting of the policyholder's risk to the insurance company. Second, it is also evident that by interpreting a term in life insurance policies providing coverage for accidental death, Indiana law directly regulates an integral part of the relationship between the insurer and the policyholder. In fact, Indiana law regarding the interpretation of life insurance policies was the very kind of state regulation Congress has identified as a law that "relates to insurance" under the McCarran–Ferguson Act:

Congress was concerned [in the McCarran–Ferguson Act] with the type of state regulation that centers around the contract of insurance.... The relationship between insurer and insured, the type of policy which could be issued, its reliability, its interpretation, and enforcement—these were the core of the "business of insurance."

*Id.* at 743–44, 105 S.Ct. at 2391, 85 L.Ed.2d at 743 (quoting *S.E.C. v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568–569, 21 L.Ed.2d 668 (1969)). Third, Indiana law requiring application of the subjective intent standard only applies to insurance companies that offer accidental death coverage.

■ Consequently, under the *Metropolitan* framework, Indiana law interpreting the life insurance policy under which plaintiff Ellington has accidental death coverage is not preempted under ERISA. Thus, if Bemis maintained an ERISA plan providing accidental death benefits through the purchase of insurance, rather than by means of an employer-funded plan, then the ERISA fiduciary should have applied the Indiana subjective intent standard in determining whether benefits should be paid to the plaintiff. *Reilly v. Blue Cross & Blue Shield of Wisconsin,* 846 F.2d 416, 425 (7th Cir.1988). As with the other issues discussed above, however, the Court must await the resolution of genuine issues of material fact regarding the structure of the alleged ERISA plan.

### Conclusion

Given the existence of genuine issues of material fact relating to each of the four issues raised by Metropolitan, its motion for summary judgment must be denied.