James T. STRZELECKI, Plaintiff,

v.

SCHWARZ PAPER COMPANY
and Andrew J. McKenna,
Sr., Defendants.

No. 92 C 6668.

United States District Court,
N.D. Illinois, E.D.

May 28, 1993.

Thomas E. Gibbs, Chicago, IL, for plaintiff.

William F. Conlon, Pamela Bristow Strobel, Glenn Douglas Newman, Sidley & Austin, Chicago, IL, for defendants.

### MEMORANDUM AND ORDER

JAMES B. MORAN, Chief Judge.

Plaintiff James Strzelecki (Strzelecki) has filed a ten-count complaint against defendants Schwarz Paper Company (Schwarz) and Andrew McKenna (McKenna), president and principal shareholder of Schwarz. The controversy concerns plaintiff's dismissal from Schwarz and Schwarz's refusal to pay him certain severance benefits and sales commissions to which he says he was entitled. Specifically, plaintiff claims that defendants breached a contract concerning the sale of company stock (count I); that they violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, by dismissing him to avoid paying certain benefits (count II), by not paying him those benefits (count III), by failing to follow certain rules in administering a benefit plan (count IV), and by breaching fiduciary duties owed to him as a participant in a benefit plan they were administering (count V); that they breached a covenant of good faith and fair dealing with respect to stock and employment contracts (count VI); that they are estopped from breaking certain promises relating to the sale of company stock (count VII); that they breached their employment contract with plaintiff (count VIII); that they breached their sales commissions contract with plaintiff (count IX); and that they dis-criminated against plaintiff on the basis of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (count X). Defendants now move to dismiss the entire complaint. Their motion is granted in part and denied in part.

### BACKGROUND

For the purpose of this motion the court assumes the truth of the allegations made in Strzelecki's complaint. Schwarz is a privately-held Chicago-based company engaged primarily in the fields of paper distribution, printing, and advertising. Strzelecki began working for Schwarz in 1968, following his graduation from college. He began as a sales representative, earning a promotion to sales manager in 1977 and to manager of national accounts in 1979. He became a vice president in 1983. Throughout Strzelecki's tenure at Schwarz, McKenna served as company president and owned over 90 percent of the company's outstanding stock. Strzelecki and McKenna enjoyed an excellent working relationship and McKenna went so far as to state on several occasions that he expected Strzelecki to spend his entire career with Schwarz.

In 1970 and 1971, Strzelecki purchased a total of 15 shares of Schwarz stock. In 1978 he used his 15 shares as collateral for a loan from the Lake Shore National Bank. He also listed the shares as assets in loan applications submitted to other institutions. As a result of those financial dealings, McKenna became concerned that a lender might demand to look into Schwarz's financial records. To prevent such an inquiry, McKenna asked Strzelecki to sell his shares back to the company. Strzelecki agreed and sold the stock for $75,000 (the value of the shares at that time, based on the company's book value) plus, significantly, any appreciation in the value of the shares from the date of the sale to the date of Strzelecki's "retirement from Schwarz." In effect, Strzelecki was to retain ownership in "phantom stock." The sales agreement was not put into writing, but over the years McKenna offered repeated assurances that no written documentation was necessary.

In 1989, McKenna suggested to Strzelecki that Strzelecki buy Schwarz's PGA Packaging Division (PGA) and run PGA while retaining his sales position with Schwarz. McKenna promised that Strzelecki could stay at Schwarz for as long as he wanted, for at least twenty more years, and that Schwarz would support the growth and development of PGA. Convinced by McKenna's representations, Strzelecki purchased PGA from Schwarz on October 9, 1989.

As an older salesperson with considerable seniority, Strzelecki had by that time become one of the more highly paid employees at Schwarz and was entitled to significant benefits—above and beyond the appreciated value of the "phantom stock" that he expected to receive upon his retirement. In June 1990, as a cost-cutting measure, McKenna asked Strzelecki to train a younger salesperson to help with his accounts. McKenna's request, along with other employment decisions at Schwarz that benefited younger employees at the expense of older employees, convinced Strzelecki that Schwarz was discriminating on the basis of age. Strzelecki refused to share his accounts with a younger salesperson.

Strzelecki was discharged in February 1991. He was forty-four years old. The company then denied him commission payments on business he had developed or obtained for it before he left. In addition, the company refused to pay him the appreciated value of his "phantom stock," which by then amounted to the considerable sum of $375,-000. (From 1980, when Strzelecki sold his stock to McKenna, to February 1991, when he left the company, the value of an individual share of Schwarz stock rose from $5,000 to $30,000.) Strzelecki then filed this lawsuit.

## DISCUSSION

### The Stock Sale Claims (Counts I, VI and VII)

Defendants argue that two separate statutes of fraud apply to this case, one found in the Illinois Commercial Code, the other in the Illinois Frauds Act, and that both preclude enforcement of the oral contract between Strzelecki and Schwarz for the sale of securities. In the same vein, they argue that no implied covenant of good faith and fair dealing attached to the sale, and that there can be no estoppel against their refusal to pay the stock's appreciated value.

The Commercial Code provides:

A contract for the sale of securities is not enforceable by way of action or defense unless:

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;

(b) delivery of a certificated security or transfer instruction has been accepted, or transfer of an uncertificated security has been registered and the transferee has failed to send written objection to the issuer within 10 days after receipt of the initial transaction statement confirming the registration, or payment has been made, but the contract is enforceable under this provision only to the extent of delivery, registration, or payment;

(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within 10 days after its receipt; or

(d) the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price.

810 ILCS 5/8–319.

The Frauds Act provides:

No action shall be brought … upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note

thereof, shall be in writing, and signed by the party to be charged therewith. . . . 740 I.L.C.S. 80/1.

■ The contract described in the complaint plainly satisfies the statute of frauds contained within the Commercial Code. The critical provision here is section (b) of the statute, 810 ILCS 5/8–319(b), which states that any contract for the sale of certificated securities, whether written or unwritten, is enforceable if the securities have been delivered. According to the complaint, Strzelecki's securities were delivered to Schwarz and Schwarz accepted them. Insofar as the Commercial Code is concerned, delivery is sufficient to prove the existence of a valid contract. *Meyer v. Logue*, 100 Ill.App.3d 1039, 56 Ill.Dec. 707, 710–11, 427 N.E.2d 1253, 1256–57 (1981).

■ However, the court does not believe that the contract meets the requirements of the Frauds Act. The contract provided that Schwarz would be awarded the appreciated value of his "phantom stock" upon his "retirement from Schwarz." The term "retirement" generally connotes the end of a person's working years. Perhaps plaintiff could show that the term "retirement" had a special meaning in the context of this particular contract, akin to the meaning of "retirement" when used to describe an officer's departure from the police force or the military, but there is no allegation in the complaint of such an unconventional usage. Because Strzelecki was in his early thirties when he entered into the agreement, and because, by his own account, he planned to work for many more years, the contract does not seem to have been performable within the span of a year. The Frauds Act requires a writing in such circumstances. *See Martin v. Federal Life Ins. Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 149, 440 N.E.2d 998, 1004 (1982); *Federal Deposit Ins. Corp. v. Bruno*, 777 F.Supp. 1432, 1437 (N.D.Ill.1991); *Lamaster v. Chicago and Northeast Illinois Dist. Council of*

*Carpenters Apprentice and Trainee Program*, 766 F.Supp. 1497, 1509 (N.D.Ill.1991).

■ The question, then, is whether the contract's satisfaction of the Commercial Code requirements "trumps" the Frauds Act requirements. In this case, by virtue of the "full performance doctrine," it must. The "full performance doctrine" is a common law rule that works both as an exception to the traditional statute of frauds—the one contained within the Frauds Act—and as an equitable remedy in the form of an estoppel. *Meyer*, 56 Ill.Dec. at 710–11, 427 N.E.2d at 1256–57. *See also Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1155 (7th Cir.1989). Under the full performance doctrine, an oral agreement may be enforced according to its terms if it has been fully performed by the party seeking enforcement. *Meyer*, 56 Ill. Dec. at 710–11, 427 N.E.2d at 1256–57. Since Strzelecki fully performed his end of the bargain when he delivered the securities, he may seek full payment from Schwarz according to the terms of the oral agreement. Of course, as this litigation proceeds, Schwarz will be free to dispute the very existence of the alleged oral agreement.

### The ERISA Claims (Counts II, III, IV and V)

■ Plaintiff alleges that the company's promise to give him the appreciated value of the 15 shares of "phantom stock" upon his retirement amounted to a protected "plan" under ERISA, 29 U.S.C. § 1002, and that the company violated various ERISA provisions by terminating him, by refusing to pay him the promised amount when he left the company, and by failing to comply with administrative requirements generally imposed on employee benefit plans.[1] The company denies that the promise it allegedly made could constitute a protected plan under ERISA.

The meaning of the term "plan" is murky, to say the least. The statutory definition of "plan" contains the word "plan," 29 U.S.C.

---

1. In his complaint, plaintiff seeks civil penalties of $1000 a day for Schwarz's failure to comply with certain administrative requirements. As defendants point out, such penalties are authorized by 29 U.S.C. § 1132(c)(2) but are payable to the Secretary of Labor, not to plan participants. In certain circumstances, plan administrators failing to comply with administrative requirements may be liable to plan participants in the amount of $100 per day, plus any other relief the court deems proper. *See* 29 U.S.C. § 1132(c)(1).

§ 1002(3), and, not surprisingly, courts have found the directive that a "plan" is a kind of "plan" to be of limited help. ERISA protects only "established" plans, 29 U.S.C. § 1002(1), but courts disagree about what an employer must do in order to establish a plan. One court found that no plan had been established, and granted summary judgment for a defendant, after observing that the arrangement at issue featured few of the attributes required of ERISA plans, such as named fiduciaries, an identifiable source of benefits, a schedule of employer contributions, or a trust to hold the plan's assets. *McQueen v. Salida Coca–Cola Bottling Company,* 652 F.Supp. 1471, 1472 (D.Colo.1987). But other courts have held, sensibly, that the applicability of ERISA standards cannot turn on an employer's compliance with them. If an employer could avoid ERISA coverage of its benefit plan simply by violating ERISA's requirements and then claiming that the plan did not function the way ERISA plans typically function, the whole purpose of the statute—to protect employees from employers' mismanagement of benefit plans—would be defeated. *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (*en banc*) (cited with approval in *James v. National Business Systems, Inc.,* 924 F.2d 718, 720 (7th Cir. 1991)). *See also Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503 (9th Cir.1985); *Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546, 551 (6th Cir.1989).

■ The Seventh Circuit has said that a plan must be a "reality," which means that a reasonable person must be able to ascertain the scheme's intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 738–39 (7th Cir.1986), *cert. den.,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Accordingly, the court has held that a plan need not

be in writing.[2] *James,* 924 F.2d at 720. A plan may be covered by ERISA whether funds are set aside to pay it or not. *See e.g., Clay v. ILC Data Device Corp.,* 771 F.Supp. 40, 45 (E.D.N.Y.1991). A plan may be covered whether it provides for lump sum payments or serial payments or leaves the method of payment to the discretion of the plan administrator. *See e.g., Criscenti v. Bradco Profit Centers' Employees Profit Sharing Investment Plan,* 698 F.Supp. 1486, 1491 (S.D.Cal.1988).

In this case plaintiff has alleged that there was an unwritten plan, to be funded out of general company revenues, which was to pay him upon his "retirement from Schwarz." The amount to be paid was to depend on the value, at the time of his retirement from Schwarz, of 15 shares of Schwarz stock that he once had owned and had sold back to Schwarz. The dispute is similar in some ways to *Silverman v. Barbizon School of Modeling & Fashion, Inc.,* 720 F.Supp. 966 (S.D.Fla.1989), another ERISA case involving employee ownership of employer stock. In *Silverman,* the employer had established two formal benefit plans—a profit-sharing plan and a pension plan—that the parties agreed were covered by ERISA. In a separate document the employer also had given one of its employees an option to buy stock at a certain price at the end of ten years. The employee was fired before ten years elapsed and the company refused to sell him the stock at the agreed price. When the employee sued under ERISA, claiming that the employer discharged him to prevent him from executing the stock option, the employer responded that the only established plans were the ones detailing profit-sharing and pension rights, and that the stock option was not a plan covered by ERISA. The court rejected the employer's characterizations, observing that nothing in ERISA prevented a

---

2. As noted above, Illinois law bars enforcement of unwritten securities transactions in many circumstances—though not the circumstances of this case—but Illinois law could not bar the enforcement of an unwritten ERISA plan involving securities since ERISA preempts any state law that would subject employers to requirements contrary to ERISA. *See FMC Corp. v. Holliday,* 498 U.S. 52, 64–65, 111 S.Ct. 403, 411, 112 L.Ed.2d 356 (1990). The court would note

that ERISA's preemptive effect may work in favor of defendants as well; should Strzelecki demonstrate that the "phantom stock" agreement was, indeed, an established employee benefit plan, he will not be able to recover any appreciated value of the "phantom stock" through state-law contract claims. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 57, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987).

company from establishing several types of plans. The fact that two plans were formal and detailed did not mean that a third plan could not exist in the guise of a simple securities agreement. (Ultimately the employee lost, despite the court's ruling that his stock option was protected by ERISA, because the court determined that he had been fired for good cause.)

One could view the appreciation value of the stock that Strzelecki says he was promised as nothing more than delayed compensation for the sale of his 15 shares. There is a fundamental difference, one could argue, between payment for stock and establishment of an ERISA plan. The Fourth Circuit took a similar position in *Fraver v. North Carolina Farm Bureau Mutual Ins. Co.*, 801 F.2d 675 (4th Cir.1986), *cert. den.*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987), holding that ERISA did not protect termination benefits afforded to departing salespersons because the benefits depended on the amount of business that the salespersons brought in during the year prior to departure. The court said that the benefits were akin to "a final commission, paid over an extended term," and were simply a part of the salespersons' employment contracts. 801 F.2d at 678. In essence, the *Fraver* court was presented with two reasonable characterizations of the agreement and it chose the one that kept the plan outside the ambit of ERISA. *Fraver* is not the law of this circuit, however, and because some reasonable persons may regard severance benefit programs as "established plans," courts here have applied ERISA consistently in cases involving the denial of severance pay. *See, e.g., Maryonovich v. Market Data Retrieval, Inc.*, 716 F.Supp. 343, 347 (N.D.Ill.1989). This court acknowledges that sellers of stock rarely receive payment in the form of oral ERISA plans, but doing so is not necessarily unreasonable and ERISA does not foreclose such a possibility. Unlike the court in *Fraver*, this court will give the benefit of the doubt to the plaintiff.

In assessing defendants' motion to dismiss, the court recognizes that the existence of a plan is, in the end, a question of fact. *Ellington v. Metropolitan Life Ins. Co.*, 696 F.Supp. 1237, 1240 (S.D.Ind.1988); *Credit Managers Ass'n of Southern California v. Kennesaw Life and Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987). Plaintiff's complaint alleges that the company established a plan covered by ERISA. At a later date, on a motion for summary judgment, defendants may attempt to show that no plan ever was established and plaintiff may have to offer facts indicating that a reasonable person would have thought an ERISA plan had been established. For now, however, Strzelecki's ERISA claims cannot be dismissed merely because the facts he pleads are highly unusual.

■ Defendants further contend that neither Schwarz nor McKenna can be regarded as a fiduciary of a plan. That argument largely rehashes their position that no plan was established. Because this court assumes, for the moment, that it can be concluded that a plan was established, the court also must assume that it can be concluded that Schwarz and McKenna were supposed to administer the plan and that they were plan fiduciaries, or that Schwarz was a plan fiduciary and McKenna participated in an alleged breach of trust. *See Thornton v. Evans*, 692 F.2d 1064, 1077 (7th Cir.1982). Defendants' positions as Strzelecki's employer and boss, respectively, did not exempt them from any obligations as fiduciaries to show loyalty to Strzelecki as the beneficiary of the plan, or to disburse the benefits to which he was entitled. *See Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1417 (2nd Cir.1985), *abrogated on other grounds by Mead Corp. v. Tilley*, 490 U.S. 714, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989). Moreover, the sweep of Strzelecki's complaint is wide enough to cover any actions defendants allegedly took while serving in their non-fiduciary capacities. They are charged with violating several ERISA provisions, including 29 U.S.C. § 1140, which bars discrimination by "any person," not just "any fiduciary," against employees on the basis of their benefit plan entitlement. Since any alleged action by defendants that resulted in the denial of Strzelecki's benefits would run afoul of one provision of ERISA or another, the characterization of their capacities at any given time as "fiduciary" or "non-fiduciary"

has very limited relevance. Defendants are the ones who allegedly deprived Strzelecki of his benefits and, given the description of the alleged plan, the court cannot envision any other entities whom Strzelecki could have sued instead of them.

■ Defendants then suggest that, even if the court assumes the existence of a protected plan to which they were fiduciaries, they still cannot be sued by a plan participant like Strzelecki. Relying on 29 U.S.C. § 1104, they argue that plan administrators and fiduciaries owe a duty of care only to plans, not to plan participants. Relying on § 1132(d), they argue that the proper defendant in any suit by a plan participant is the plan itself. Given ERISA's overarching goal of protecting plan beneficiaries, defendants' statutory interpretation is untenable. Were courts to adopt their crabbed vision of the range of causes of action available under ERISA, no recovery would be possible in cases like Strzelecki's that involve benefit plans with no formal or suable structure. Defendants focus too narrowly on two subsections, to the neglect of the rest of the statute. To be sure, § 1132(d) establishes that benefit plans may sue or be sued, and judgments obtained pursuant to § 1132(d) against a plan are enforceable only against that plan, but § 1132(a) authorizes suits by plan participants against plan administrators and fiduciaries, not just plans. *See Financial Institutions Retirement Fund v. Office of Thrift Supervision,* 964 F.2d 142 (2d Cir.1992). Strzelecki may proceed against both Schwarz and McKenna on his ERISA claims.

### The Employment Contract Claims (Counts VI and VIII)

Defendants urge this court to dismiss Strzelecki's claims relating to his employment contract with Schwarz because (1) the contract was unwritten and (2) employment contracts are presumed to be "at will" in Illinois. The legal issues presented here are reminiscent of those presented in *Lamaster,* 766 F.Supp. 1497, in which this court rejected similar arguments put forward by an employer accused of breaching an oral contract for permanent employment.

■ Strzelecki contends that McKenna promised him he could work for Schwarz for as long as he desired. That promise does not run afoul of the statute of frauds found in the Frauds Act, 740 ILCS 80/1, because Strzelecki could have decided to leave Schwarz within a year. *See Lamaster,* 766 F.Supp. at 1509; *Martin,* 65 Ill.Dec. at 149, 440 N.E.2d at 1004. McKenna assured Strzelecki that he could stay with the company for another twenty years, but Strzelecki never promised that he would, so the court cannot conclude, as defendants do, that performance of the contract required twenty years.

■ To overcome the presumption that an employment contract was "at will," an employee also must demonstrate two additional facts. First, the employee must show that the employer clearly promised an extended term of employment. *Lamaster,* 766 F.Supp. at 1499. Second, the employee must show that the employer received valid consideration for altering the nature of the contractual relationship. *Id.* If the employer's assurances were ambiguous, or if the consideration paid involved no more than the employee's foregoing the right to pursue other job opportunities, the presumption of "at will" employment is not rebutted. In this case, Strzelecki asserts that McKenna, in the course of soliciting plaintiff's purchase of the PGA Packaging Division, promised plaintiff permanent employment in no uncertain terms, and that plaintiff responded both by remaining at Schwarz and, significantly, by purchasing PGA. Given the facts alleged in the complaint, Strzelecki is entitled to proceed with his claims pertaining to his contract for permanent employment with Schwarz.

### The Commissions Contract Claim (Count IX)

■ Strzelecki alleges that Schwarz breached the agreement between Schwarz and Strzelecki whereby the company agreed to pay Strzelecki commissions for business he developed and obtained for it. Defendants argue that the complaint is too vague (and it is very sketchy), but plaintiff has stated that a contract was formed, that it was performed

by plaintiff, that it was breached by defendant, and that plaintiff suffered damages. The terms of the contract are not laid out, but sufficient detail has been provided to enable defendants to identify the contract at issue. *Cleland v. Stadt,* 670 F.Supp. 814, 817 (N.D.Ill.1987). Strzelecki has satisfied the notice pleading requirements set out in Rule 8 of the Federal Rules of Civil Procedure and may proceed with his claim.

### The ADEA Claim (Count X)

 Plaintiff alleges that Schwarz and McKenna discriminated against him on the basis of age. Defendants seek a "more definite statement as to the particular discriminatory acts" alleged. The court again finds plaintiff's complaint to be sufficiently specific to give defendants proper notice of the charges against them. Strzelecki alleges that the company sought to reduce the number of accounts he handled, and then fired him, because of his age. Such facts may support claims against both Schwarz and McKenna, who, as an agent of Schwarz, may be personally liable on the discrimination claim because he was an "employer" within the meaning of 29 U.S.C. § 630(b)[3]. *See House v. Cannon Mills Co.,* 713 F.Supp. 159 (M.D.N.C.1988); *see also Price v. Marshall Erdman & Associates, Inc.,* 966 F.2d 320, 324 (7th Cir.1992) (discussing personal liability under ADEA of defendant supervisor who made decision on behalf of defendant company to fire plaintiff). Of course, Strzelecki will have to show more should defendants seek summary judgment, but for now his pleadings are sufficient.

### McKenna as a Defendant in the State Law Claims

 The complaint names both Schwarz and McKenna as defendants in all counts. Defendants argue that all claims against McKenna should be dismissed and plaintiff responds that none should be. As already

noted, McKenna may be personally liable for violations of ERISA and the ADEA. That leaves the question of his liability on the state law claims, all of which are contract or quasi-contract claims concerning financial dealings between Strzelecki and Schwarz.

 McKenna was not a party to any of the contracts at issue, but he allegedly served as Schwarz's agent in negotiating them and he allegedly made decisions that caused Schwarz to breach them. The general rule under Illinois law is that an agent may not be held personally liable for a breach of contract by his or her principal when the agent has disclosed the fact that he or she is acting on behalf of the principal. *See Joe & Dan International Corp. v. United States Fidelity & Guaranty Co.,* 178 Ill. App.3d 741, 127 Ill.Dec. 830, 833–34, 533 N.E.2d 912, 915–16 (1988), *appeal den.* 126 Ill.2d 559, 133 Ill.Dec. 668, 541 N.E.2d 1106 (1989); *Clark v. Maddux,* 118 Ill.App.3d 546, 73 Ill.Dec. 930, 933, 454 N.E.2d 1179, 1182 (1983); *Powers v. Warner Bros. Records, Inc.,* 411 F.Supp. 747, 748 (N.D.Ill.1976).

 An exception to the general rule is found in *Landau v. Landau,* 409 Ill. 556, 101 N.E.2d 103 (1951), where the Illinois Supreme Court held that "an agent is not liable for the acts of a disclosed principal, unless he takes some active part in violating some duty the principal owes to a third person." *Id.* 101 N.E.2d at 108. McKenna is alleged to have taken an active part in breaches of contracts between Schwarz and Strzelecki, but, unfortunately for plaintiff, the *Landau* exception is not applicable in contract cases. *See Gateway Erectors Division of Imoco-Gateway Corp. v. Lutheran General Hosp.,* 102 Ill.App.3d 300, 58 Ill.Dec. 78, 80, 430 N.E.2d 20, 22 (1981). Thus, McKenna may not be held personally liable on any of the state law claims.

---

**3.** The court is aware of the Ninth Circuit's recent decision in *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993), which stated that a supervisor could not be held personally liable under the ADEA for a discriminatory decision made on behalf of an employer corporation. *Miller* seems to be inconsistent both with Seventh Circuit law and, more generally, with the broad purposes of the ADEA. The ADEA is designed not only to compensate victims of discrimination but to deter potential discriminators, and the latter goal is undermined when people who make discriminatory decisions do not have to pay for them.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part.