American Transportation Company, Inc. et al., Appellants, v. U. S. Sanitary Specialties Corporation et al., Appellees.

Gen. No. 46,122.

Opinion filed April 8, 1954. Released for publication April 27, 1954.

JACOB STAGMAN, of Chicago, for appellants; JAMES C. SPANGLER, of Chicago, of counsel.

KRINSKY, LEVITAN & GLASSNER, of Chicago, for certain appellee; JAMES J. GLASSNER, of Chicago, of counsel.

HINSHAW, CULBERTSON, MOELMANN & HOBAN, for certain other appellee; OSWELL G. TREADWAY, of Chicago, of counsel.

EUGENE P. KEALY, of Chicago, for certain other appellee.

MR. JUSTICE ROBSON delivered the opinion of the court.

The American Transportation Company, Inc., a corporation, Standard Freight Lines, Inc., a corporation, and Harry F. Chaddick, plaintiffs, sued the City of Chicago, a municipal corporation, Harry A. Lipsky, Mabel G. Reinecke and William B. Daly, known as The Board of Election Commissioners of the City of Chicago, parties defendant to Count I of the amended complaint, the U. S. Sanitary Specialties Corporation, a corporation, defendant to Count II, and the U. S. Sanitary Specialties Corporation, Economy Plumbing and Heating Company, a corporation, and Goodwin Construction Company, a corporation, defendants to Count III. The City and the Election Commissioners filed their answer and counterclaim. The defendants to

146

Counts II and III filed a motion to strike the amended complaint, which, after hearing, was allowed by the trial court. Plaintiffs elected to stand on their amended complaint and appealed to this court.

The trial court made no findings in its order of dismissal, so we must consider the defenses raised by the respective defendants in their motions to dismiss Counts II and III.

It is not necessary for us to pass on Count I except for the purpose of considering its allegations in connection with the other two counts. In substance it alleges that the City of Chicago and Election Commissioners and one of the plaintiffs, the American Transportation Company, Inc., entered into an agreement dated August 23, 1948, for the purpose of furnishing office, repair shop and storage space for voting machines to the City and Election Commissioners. The lessor also agreed for a separate consideration to make deliveries and pickups of said machines. The American Transportation Company agreed that the machines would be stored in a building of fireproof construction free from dampness. They were to be stored on a part of the third-floor premises occupied by the plaintiffs, and leased by them from the U. S. Sanitary Specialties Corporation. The answer and counterclaim of the City and Election Commissioners alleges constructive eviction and asks damages because of it. The defendants to Count I are not involved in this appeal.

Count II alleges that defendant U. S. Sanitary Specialties Corporation, the lessor in a lease with the plaintiffs, breached the implied covenant of quiet enjoyment in the lease by breaking into and entering the premises leased to the plaintiffs and causing the City and Election Commissioners to vacate the part of the premises occupied by them under an agreement with plaintiffs. The breach, it is alleged, was caused by

the defendant when it remodeled a part or portion of the premises that it occupied and changed the air pressure in the water system causing it to overflow and cover the premises, in which the voting machines were stored, with water. It is further alleged that contractors employed by the defendant punched holes through the cement ceiling, causing pieces of cement to fall upon the premises where the voting machines were stored.

Count III alleges that the defendants U. S. Sanitary Specialties Corporation, Goodwin Construction Company and Economy Plumbing and Heating Company trespassed upon the premises of the plaintiff by breaking into and entering without notice and consent upon the portion of the premises occupied by the plaintiff and that portion of the premises sublet to the Election Commissioners; that the defendants negligently caused concrete to fall upon the voting machines, and caused water to cover the floor of the premises occupied by the City and the Election Commissioners, which resulted in the cancellation of the agreement between the City and the Election Commissioners and the plaintiffs.

We will first consider the motion to strike made by defendant U. S. Sanitary Specialties Corporation, which is the sole defendant to Count II and one of the defendants to Count III. The pertinent provisions of the lease between it and plaintiffs read as follows:

"5. Lessee covenants and agrees that he will protect and save and keep the Lessor forever harmless and indemnified against and from any penalty or damage or charges imposed for any violation of any laws or ordinances, whether occasioned by the neglect of Lessee or those holding under Lessee, and that Lessee will at all times protect, indemnify and save and keep harmless the Lessor against and from any and all loss,

cost, damage or expense, arising out of or from any accident or other occurrence on or about said premises, causing injury to any person or property whomsoever or whatsoever and will protect, indemnify and save and keep harmless the Lessor against and from any and all claims and against and from any and all loss, cost, damage or expense arising out of any failure of Lessee in any respect to comply with and perform all the requirements and provisions hereof.

"6. Lessor shall not be liable for any damage occasioned by failure to keep said premises in repair, nor for any damage done or occasioned by or from plumbing, gas, water, sprinkler, steam or other pipes or sewerage or the bursting, leaking or running of any pipes, tank or plumbing fixtures, in, above, upon or about said building or premises, nor for any damage occasioned by water, snow or ice being upon or coming through the roof, skylights, trap door or otherwise, nor for any damages arising from acts, or neglect of co-tenants, or other occupants of the same building, or of any owners, or occupants, of adjacent or contiguous property."

These are what are commonly known as exculpatory clauses. Plaintiffs cite several cases in support of their contention that these clauses should not apply because they are against public policy. We are aware that the effectiveness of these provisions has in some decisions in the past few years been considered with some disfavor. The Supreme Court in a very carefully considered opinion in the recent case of *Jackson v. First Nat. Bank*, 415 Ill. 453, put any question to rest that we might have had in the instant case. The court said at page 462:

"An examination of the authorities in other jurisdictions leads us to the conclusion that by the great weight of authority the rule is that an exculpatory

clause, specifically or generally providing that the lessor shall not be liable for damages or injuries to the lessee or his property from all or certain causes, is not against public policy but is valid and enforceable. . . .

"In accordance with former decisions of this court and those of other jurisdictions, the provisions of the lease now before us are valid and enforceable unless there is something in the social position or social relationship of the parties opposed to its operation. It is suggested by appellant that there is a disparity of bargaining power between the parties to this agreement, so that to enforce it would result in great injustice. The inference sought to be drawn from this line of argument is that the lessee had no freedom of choice; that he had either to accept what was offered or be deprived of the advantages of the relationship. There is nothing in the record or the circumstances surrounding the parties to bear out this contention. This is a business lease. There is nothing to suggest that the parties were not dealing at arms' length and upon equal footing. No facts are brought to our attention from which it might be reasonable to infer that the lessee was forced to take the storeroom upon lessor's terms. Certainly we are not prepared to say that in all transactions involving business leases there is always a balance of bargaining power in favor of the landlord."

 We conclude that the exculpatory clauses of the lease, between defendant U. S. Sanitary Specialties Corporation and the plaintiffs, absolved U. S. Sanitary Specialties Corporation from any liability for the acts charged in Counts II and III of the complaint.

 It is contended that there is improper joinder of plaintiffs because Standard Freight Lines and

150

Harry Chaddick, colessees of the premises, were not parties to the agreement with the City and the Election Commissioners. They were, however, colessees of the premises involved. Although not parties to the contract between the American Transportation Company and the City and Election Commissioners, nevertheless, the premises involved in their agreement were leased jointly by all three plaintiffs. They were bound by the lease and all were entitled to the use, enjoyment and profits therefrom. Where one of several cotenants, equally bound by a lease and having joint rights and obligations thereunder, is in possession, such possession is a possession of all cotenants. *Kesner v. Truax,* 195 Ill. App. 285. Standard Freight Lines and Harry Chaddick were proper parties plaintiff.

Defendants Economy and Goodwin contend they had no notice of plaintiffs' possession, that they had the right to assume general possession of the premises was in the owner, U. S. Sanitary Specialties Corporation; that, without such notice, and, therefore, not having been able to foresee plaintiffs' damage, they cannot be charged with negligence. Actual possession is such notice to all the world as will put on inquiry those acquiring title or a lien on the land to ascertain the nature of the right that the occupant has in the premises. While this has generally been applied to those situations involving the rights of a subsequent purchaser as against those of a tenant holding under the former lessor or owner, it has nevertheless been implicit in all cases involving trespass and injury to land irrespective of the trespasser's actual knowledge of a particular tenant's possession and rights. The principle has been extended in the case of *Dumois v. Mayor, etc. of City of New York,* 37 Misc. 614, 76 N. Y. S. 161, 164, to cover the rights of assignees of a lease and the assignor against a third party without

actual knowledge of the assignees' possession to recover damages caused by a nuisance maintained by the third party. The defendant in that case contended that it had no actual notice of the tenants' possession. The court allowed recovery against the defendant and drew no distinction between the rights and liabilities of a subsequent purchaser without actual knowledge and those of a tort-feasor without actual knowledge of the tenants' possession. We think the decision is sound. We conclude that the contention of defendants on this point is without merit.

We must now decide whether a cause of action is stated against the Economy Company and the Goodwin Company, the remaining defendants in Count III. They were not parties to the agreement between the Election Commissioners and the plaintiffs. Do the plaintiffs have a right of action against them for their acts of trespass as alleged in Count III, and for the loss of revenue to the plaintiffs under the agreement with the City and the Election Commissioners?

In 41 Harvard Law Review 732 to 742 we find a very thorough treatment of the subject of "Elements of the Tort of Interference with Contract Relations." The concluding paragraph reads as follows:

"While negligent interference with contract interests may impose a heavy penalty, it may nevertheless be said in extenuation that before liability can be established, some faultless person must have suffered the damages and there must exist all the restrictions on liability that exist in cases of negligent invasions of more tangible interests—negligence as to the interest in question or some quite closely related interest, and the negligence must be a legal cause of the damage. And finally, it may be said that.contract interests have often been treated as property, and there seems to be no sufficient reason for distinguishing this interest

from other property interests and for limiting liability to intentional invasions of this interest while extending it to cover negligent invasions of other property interests. Consistency and policy both favor the same protection to each."

■ The case of *Younggreen v. Shelton,* 101 Ill. App. 89, closely follows the conclusion reached in the Harvard Law Review article. It held that if a person interferes with a tenant so far as to disturb the enjoyment of the use of the premises leased, and thereby causes loss of rent or damage to the landlord, the landlord may recover. To the same effect is *Conklin v. Newman,* 278 Ill. 30, 37. We therefore conclude that plaintiffs have a cause of action against the Economy Company and the Goodwin Company as alleged in Count III.

We must now consider whether the defendants Economy Plumbing and Heating Company and the Goodwin Construction Company were properly joined as parties defendant with the City and the Election Commissioners. The action against the City and the Election Commissioners in Count I is for damages due for breach of their agreement. The action against the Economy and Goodwin companies, as alleged in Count III, is in tort, and is in the alternative for trespass because of their negligent acts which caused the Election Commissioners to vacate the premises before the expiration of the agreement. Economy and Goodwin contend that the supposed cause of action against them does not arise out of the same transaction as the cause of action against the City and the Election Commissioners.

Section 24 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1953, chap. 110, par. 148 [Jones Ill. Stats. Ann. 104.024]), pertaining to joinder of defendants, reads as follows:

"(1) Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the same arose, or whom it is necessary to make a party for the complete determination or settlement of any question involved therein, or against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions, regardless of the number of causes of action joined.

"(2) It shall not be necessary that each defendant shall be interested as to all the relief prayed for, or as to every cause of action included in any proceeding against him; but the court may make such order as may be just to prevent any defendant from being embarrassed or put to expense by being required to attend any proceedings in which he may have no interest.

"(3) Where the plaintiff is in doubt as to the person from whom he is entitled to redress, he may join two or more defendants, and state his claim against them in the alternative in the same count or plead separate counts in the alternative against different defendants, to the intent that the question which, if any, of the defendants is liable, and to what extent, may be determined as between the parties."

It was the object of the Practice Act to liberalize pleadings and we must construe the subsections of this section liberally. Our present practice in Illinois is based on the Practice Acts of New Jersey and New York, and they in turn based their respective Acts on the English practice. In the case of *Cook-Master, Inc. v. Nicro Steel Products, Inc.*, 339 Ill. App. 519, six separate counts were involved. Some were in the alternative and all of the defendants were not par-

154

ties to each of the counts. The court held that it was proper to plead in the alternative in separate counts and to have separate defendants to the various counts so long as the transaction had a common ground. To the same effect is *People v. Leviton,* 327 Ill. App. 309, 319.

Is there a common ground? In an examination of the authorities submitted by the respective parties on this issue, we find none that is squarely in point. The nearest we have been able to find is a decision of the New York Court of Appeals, *Great Northern Tel. Co. v. Yokohama Specie Bank,* 297 N. Y. 135, in which sections of the New York Practice Act comparable to those heretofore cited by us from the Illinois Practice Act were involved. The facts were that the defendant, Yokohama Specie Bank, a Japanese corporation, was licensed to maintain a banking business in New York. The Yokohama bank, at the request of the plaintiff, a Danish corporation, agreed to make payment in dollars to plaintiff at its New York Agency. The defendant Chartered Bank of India, Australia and China agreed to collect these payments for plaintiff's account. At the outbreak of war between the United States and Japan the Superintendent of Banks of New York took possession of the Yokohama bank. The Chartered Bank filed three certain claims with the Superintendent of Banks against the Yokohama bank, but failed to file a fourth claim, and also failed to institute an action for the collection of the claims before expiration of the statutory period for the filing of such actions. The plaintiff, during the occupancy of Denmark, was under disability to commence any action and received no notice of the requirements for filing claims and instituting suits. The original action was in contract against the Superintendent of Banks and the Yokohama Specie Bank, in liquidation, for its claims.

155

Defendant pleaded the statute limiting the period for the commencement of such action. Plaintiff sought to have the Chartered Bank made an additional defendant. The relief sought against it was in the alternative for its failure to file claims and bring actions thereon within the time limit and was in tort. The trial court denied plaintiff's motion, and the Appellate Division of the Supreme Court affirmed the action of the trial court. The Court of Appeals reversed the Appellate Division and the trial court. It held that separate causes of action against each of the defendants arose out of the same transaction or series of transactions and a common question of law and fact was involved. Plaintiff's right to relief existed in the alternative against the fund in the possession of the Superintendent of Banks if its cause of action was not barred by the statutory limitation, and against the Chartered Bank if its cause of action against the Superintendent had been lost because of the failure of the Chartered Bank to make timely demands or institute action for collection of the money held for plaintiff's account. The question of law and fact involved as to both parties was whether or not the action to recover from the Superintendent was barred by the statute of limitations. The court held that the purpose of the Civil Practice Act was to simplify and facilitate the conduct of litigation and was therefore to be liberally construed to accomplish that purpose. It further held that the case was not only within the purview of these purposes, but within the clear meaning of the Practice Act when construed in the light of the English practice.

The decision in the *Great Northern Tel. Co.* case is particularly applicable to this complaint. Plaintiffs' right to relief exists in the alternative, first against the City and Election Commissioners under

156

Count I. If the acts of Economy and Goodwin, as alleged in Count III, caused the loss of revenue to the plaintiffs under their agreement with the City and Election Commissioners, and not the breach of contract as alleged in Count I, then the court or jury may consider whether defendants Economy and Goodwin are liable for damages in Count III. We are of the opinion that the plaintiffs properly pleaded in the alternative, as provided in section 24, subparagraphs (1), (2), and (3), of the Illinois Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 148, subds. (1)–(3); Jones Ill. Stats. Ann. 104.024, subds. (1)–(3)], against Economy and Goodwin in Count III, so that the question of liability, if any, may be determined between the respective defendants, who are parties to Counts I and III.

For the reasons stated, the judgment order as to U. S. Sanitary Specialties Corporation, a corporation, is affirmed; and the judgment order as to Economy Plumbing and Heating Company, a corporation, and Goodwin Construction Company, a corporation, is reversed, and the cause is remanded with directions that the judgment order which sustained the motion of defendants Economy Plumbing and Heating Company and Goodwin Construction Company to strike the complaint and dismiss the suit be vacated, that these defendants be required to answer the complaint, and that such further proceedings be had as are not inconsistent with the views herein expressed.

*Affirmed in part, reversed in part and cause remanded with directions.*

SCHWARTZ, P. J. and TUOHY, J., concur.