JOE & DAN INTERNATIONAL CORPORATION, Plaintiff-Appellee and Cross-Appellant, v. UNITED STATES FIDELITY & GUARANTY COMPANY *et al.*, Defendants-Appellants and Cross-Appellees (Michaels-Peterson Insurance Service, Inc., *et al.*, Defendants-Appellees and Cross-Appellees).

First District (3rd Division)   Nos. 87—3486, 87—3523 cons.

Opinion filed November 23, 1988.—Rehearing denied February 3, 1989.

Terrence J. Goggin and Paul E. Kralovec, both of Goggin, Cutler & Hull, of Chicago (Jennifer Craigmile Neubauer, of counsel), for appellants Mid-National Insurance Service, Inc., and David Pomper.

Torshen, Schoenfield & Spreyer, Ltd., of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellee Joe & Dan International Corporation.

JUSTICE FREEMAN delivered the opinion of the court:

These consolidated appeals arise from the lawsuit of plaintiff, Joe & Dan International Corp., against defendants, United States Fidelity & Guaranty Company (USF&G), Mid-National Insurance Service, Inc., and its president, David Pomper (hereinafter collectively Pomper), Michaels-Peterson Insurance Service, Inc., and its president, Sam Schacter (hereinafter collectively Schacter). After a jury trial in the circuit court of Cook County, the court entered judgment on the verdicts returned for plaintiff against USF&G and Pomper and for Schacter against plaintiff.

Plaintiff's amended complaint for declaratory judgment contained four counts pleaded in the alternative Count I, against USF&G, alleged the following: that on December 26, 1984, Sam Schacter, plaintiff's insurance broker, requested of USF&G, through its agent David Pomper, that it reissue a previously cancelled "all risks" policy on a "named perils" basis only, excluding coverage for burglary, to cover plaintiff's retail clothing business. On that date, David Pomper, as USF&G's agent, advised Sam Schacter that plaintiff was "bound," i.e., covered by insurance. On January 24, 1985, a fire occurred on plaintiff's business premises which totally destroyed its business property. After plaintiff, through Schacter, notified USF&G, through Pomper, of the fire, Pomper advised Schacter that plaintiff was covered by insurance. Thereafter, Pomper denied that plaintiff had been "bound" and informed Schacter that USF&G would not cover plaintiff's fire loss. Plaintiff relied on Pomper's advice to Schacter that it was covered by insurance and did not seek insurance coverage elsewhere. At no time prior to the fire did USF&G or Pomper advise plaintiff or Schacter that USF&G would not cover plaintiff on a "named perils"

basis only, excluding burglary. On the basis of the foregoing, plaintiff claims USF&G is bound by the acts of its agents to cover plaintiff's fire loss.

Count II, against Pomper, alleged that, from the time plaintiff first obtained business insurance from USF&G through Pomper, the latter had, *inter alia*, warranted to plaintiff and Schacter that he had the authority to act as USF&G's agent and, specifically, to bind USF&G to cover plaintiff on a "named perils" basis only, excluding burglary. Plaintiff, relying on Pomper's warranty of authority, believed it was covered on a "named perils" basis by USF&G. Pomper did not have the authority warranted and is therefore liable for plaintiff's fire loss due to the breach of warranty.

Count III was stricken before trial. Count IV of the complaint alleged that Schacter, as plaintiff's insurance broker, owed plaintiff a duty to obtain insurance coverage, which he undertook after cancellation on December 14, 1984, of plaintiff's "all risks" coverage by USF&G, or to advise plaintiff promptly if no coverage was available. Schacter breached that duty by negligently failing to obtain coverage and to advise plaintiff thereof. Schacter's failure to obtain insurance coverage on a "named perils" basis only, excluding burglary, proximately caused plaintiff's damages from the fire loss.

Each defendant filed counterclaims for contribution against the other defendants. USF&G alleged that Pomper had no authority after December 14, 1984, to bind insurance with USF&G as insurer and plaintiff as insured. It further alleged that any liability to plaintiff would be solely the result of Pomper's breach of duty and unauthorized representations to Schacter. Pomper alleged that, on or about December 26, 1984, he requested that USF&G issue a "rewrite" of plaintiff's previously cancelled "all risks" policy on a "named perils" basis, including fire protection. He further alleged that USF&G negligently failed: (1) to process the request for a "rewrite" promptly; (2) to promptly notify Pomper of the status of the request; and (3) to notify plaintiff that Pomper had limited authority to bind coverage for USF&G. Lastly, Pomper alleged that Schacter breached his duty to obtain insurance coverage for plaintiff, failed to advise plaintiff thereof, failed to ascertain the extent of Mid-National's authority to bind coverage for USF&G on rewritten policies and failed to monitor the status of the request for coverage.

USF&G now appeals the trial court's denial of its motions for directed verdict, a judgment notwithstanding the verdict (judgment *n.o.v.*) or a new trial. Pomper appeals the trial court's denial of his motions for judgment *n.o.v.* or a new trial, the dismissal of his counter-

claim against USF&G, the directed verdict for USF&G on its counter-claim against him and the denial of a directed verdict on, and the dismissal of, his counterclaim against Schacter. Plaintiff cross-appeals the denial of prejudgment interest and prays, in the event relief is granted to any defendant, for a new trial as to all defendants, including Schacter.

We have considered the arguments of USF&G and Pomper regarding the denial of directed verdicts and judgments notwithstanding the verdicts in plaintiff's case against them. However, those arguments do not convince us that the standard established for such relief in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, is satisfied here. We therefore affirm the denial of that relief by the trial court.

USF&G and Pomper make various arguments respecting the denial of their motions for new trial. We believe that Pomper's assertion that the verdicts rendered against him and USF&G in plaintiff's favor were legally inconsistent is dispositive of his, and, per force, USF&G's right to a new trial.

■ Preliminarily, we address, *sua sponte*, whether the inconsistency of the verdicts was properly preserved for appeal. At the close of all the evidence, the following colloquy occurred between Pomper's trial counsel and the court:

"MR. GOGGIN [Defense Counsel]: Motion for directed verdict on behalf of *** Mid-National *** and David Pomper in essence on the grounds, your Honor, that the allegations against Mr. Pomper are for breach of warranty, and there has been—according to the allegations of the complaint, the warranty was that he had authority to bind USF&G and by his conduct and acts and oral statements did bind USF&G.

THE COURT: No. The count against you was that he did not. The breach of warranty assumes a lack of authority. it's an inconsistent theory; apparently [plaintiff's counsel] wants to go to the jury on an inconsistent theory. The element of it is that he did not have authority."

Thus, the trial court recognized that Pomper's counsel was moving for a directed verdict on the basis of the inconsistency inherent in plaintiff's claims against Pomper and USF&G. Moreover, after the jury returned its verdicts against USF&G and Pomper, Pomper's counsel moved for a mistrial on the basis of the inconsistency in the verdicts. This motion was not timely. A motion for mistrial is properly made only before a verdict is rendered. it is not properly made either after a verdict is rendered or a judgment is entered on the verdict. (*Williams*

*v. Deasel* (1974), 19 Ill. App. 3d 353, 355, 311 N.E.2d 414.) However, we believe that motion, Pomper's motion for directed verdict at the close of all the evidence and the motion for new trial based on the denial of the motion for mistrial adequately preserved the inconsistency of the verdicts for appeal. *Cf. City of Chicago v. Garrett* (1985), 136 Ill. App. 3d 529, 483 N.E.2d 409 (no waiver where: (1) after verdict, defendant renewed motion for mistrial filed but withdrawn before verdict and requested new trial; and (2) colloquy between trial court and counsel on mistrial motion revealed awareness of objection and consideration of its merits).

Proceeding to the merits of Pomper's claim, he argues that to find USF&G liable to plaintiff on the coverage which he, Pomper, allegedly bound, the jury had to find that USF&G clothed him with apparent authority to bind its coverage. He also asserts that, in order to find him liable to plaintiff for breach of an implied warranty of authority, the jury had to find that he lacked authority to bind USF&G's coverage. Pomper concludes that it is impossible for him to simultaneously lack authority to bind USF&G and thus breach an implied warranty of authority and to possess apparent authority to bind USF&G to an insurance contract, breach of which rendered USF&G liable thereon.

■ Based on general principles of agency law, we agree that Pomper and USF&G could not both be liable to plaintiff on the theories asserted against them at trial, *i.e.*, liability for breach of an implied warranty of authority and liability on the contract of insurance which USF&G had apparently authorized Pomper to enter on its behalf.

Section 329 of the Restatement (Second) of Agency states:

"A person who purports to make a contract, conveyance or representation on behalf of another who has full capacity but whom he has no power to bind, thereby becomes subject to liability to the other party thereto upon an implied warranty of authority, unless he has manifested that he does not make such warranty or the other party knows that the agent is not so authorized." (Restatement (Second) of Agency §329 (1987).)

Comment *f* to section 329 further states:

"If an agent makes his principal a party to the transaction, the rule stated *** dos not apply. Thus, if he acts in violation of orders but within his power to bind his principal (see §§159-178), the agent is not liable to the other party to the transaction since, if the principal becomes a party, the rights of the other party are not affected by the fact that the agent committed a wrong to his principal." (Restatement (Second) of Agency §329, comment *f* (1958).)

Significantly, section 159, the first section to which comment *f* refers as illustrative of an agent's power to bind his principal, states:

"A disclosed or partially disclosed principal is subject to liability upon contracts made by an agent acting within his apparent authority if made in proper form and with the understanding that the apparent principal is a party. The rules as to the liability of a principal for authorized acts are applicable to unauthorized acts which are apparently authorized." (Restatement (Second) of Agency § 159 (1958).)

Construing these provisions together, it is obvious that an agent cannot be liable to a third party with whom he has contracted on his principal's behalf on the basis of a breach of an implied warranty of authority where, although the agent exceeded his actual authority, he nevertheless had apparent authority from his principal to act as he did. As such, we believe that *Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 394 N.E.2d 1273, which plaintiff cites in support of is verdicts, was wrongly decided. *Grover* holds that an agent who, *inter alia*, exceeds his actual authority may be held liable, along with his principal, to a third party with whom he deals although he does not exceed his apparent authority in doing so. Contrary to the *Grover* court's conclusion, however, insofar as it insulates or relieves an agent from liability to a third party, apparent authority is no different from actual authority.

In *Benner v. Farm Bureau Mutual Insurance Co. of Idaho, Inc.* (1974), 96 Idaho 311, 313-14, 528 P.2d 193, 195-96, the court stated, after citing the general rule of section 329:

"In this case the agent Baumann was found to have contracted in a manner he was not authorized to do by his principal Farm Bureau, but nevertheless Farm Bureau was obligated upon the contract because Baumann was acting within the scope of his apparent authority. Baumann did not breach a warranty of authority to the [plaintiffs] because [they] were able to hold Farm Bureau to the contract which he entered into with them. The rule holding an agent liable to a third party for entering into a contract which the agent was not authorized to enter into was not intended to apply to the situation where the principal was nevertheless bound as if the agent were authorized to reach such an agreement with the third party. *** Because, from [plaintiffs'] point of view, Baumann bound his principal as he impliedly warranted he would, [they] have no more claim against him than they would have against any other agent contracting on a principal's behalf. [Plaintiffs] are not entitled to judgment

against Baumann."

In *Tri-Delta Engineering, Inc. v. Insurance Co. of North America* (1978), 80 Cal. App. 3d 752, 760, 146 Cal. Rptr. 14, 19, a jury awarded an insured one half of its compensatory damages from the agency and its salesman, Donovan who had solicited it for insurance coverage and one half against the defendant insurer with whom they had placed the insured but which had denied it coverage for a theft loss. The insured sought to justify the award against the former on breach of an implied warranty of authority. The court concluded:

> "Since the jury's verdict against [Insurance Company of North America] constitutes an implied finding that Donovan in fact had actual or ostensible authority to bind it for theft coverage under the contract, such a breach could not have occurred." 80 Cal. App. 3d at 760, 146 Cal. Rptr. at 19.

Moreover, such a verdict against an insurer's agent and a verdict against the insurer in favor of an insured are legally inconsistent. In *Crawford v. DiMicco* (Fla. App. 1968), 216 So. 2d 769, 771, the court stated:

> "In the case sub judice the plaintiff initiated this cause of action against the defendant, Buckingham-Wheeler Agency, on the theory that [it] was liable for negligently failing to place insurance coverage on the boat. The plaintiff proceeded against Fidelity-Phenix Insurance Corporation on the basis that [it] was liable for insurance coverage placed on the boat by the Buckingham-Wheeler Agency. The jury brought in a verdict in favor of the plaintiff against the agency and the insurer. Inherent in the verdict against the agency is a finding that there was no insurance coverage. Inherent in the verdict against the insurer is a finding that there was insurance coverage. Obviously, the verdict is inconsistent and self-contradictory."

Similarly, in *United States Fidelity & Guaranty Co. v. McKinnon* (Ala. 1978), 356 So. 2d 600, 607, the defendant insurer argued that a jury's general verdict for the plaintiff insured on both counts of her complaint was self-contradictory. One count alleged breach of a contract of insurance while the other alleged a fraudulent misrepresentation that a contract existed. The court agreed, finding that the general verdict "had the effect of finding both that there was a contract and that there was not." 356 So. 2d at 607.

That *Crawford* involved one verdict against both the insurer's agent and the insurer and that *McKinnon* involved one verdict against the insurer alone do not make those cases inapposite here.

■ As plaintiff notes, it pleaded separate counts against USF&G

and Pomper in the alternative and the jury was instructed "to decide each defendant's case separately as if it were a separate lawsuit." Moreover, the Civil Practice Law explicitly contemplates alternative pleading. (See Ill. Rev. Stat. 1985, ch. 110, pars. 2—404, 2—405(c), 2—603(b), 2—613(b).) However, we do not believe that, because he is entitled to plead in the alternative, a plaintiff is entitled to recover on more than one of multiple and mutually exclusive alternative theories pleaded against alternative defendants. Section 2—604 of the Civil Practice Law provides that relief may be requested "in the alternative." (Ill. Rev. Stat. 1985, ch. 110, par. 2—604.) Construing the foregoing provisions of the Civil Practice Law in light of section 2—604 leads us to conclude that a plaintiff is entitled to recover against only one of multiple defendants who he alleges are liable in the alternative. See, *e.g., McCormick v. Koppmann* (1959), 23 Ill. App. 2d 189, 197-202, 161 N.E.2d 720 (and cases cited therein).

In addition to the instruction cited by plaintiff, the jury was also instructed that neither defendant was to be prejudiced by a finding against the other. However, these instructions did not go far enough. The court should have instructed the jury that the counts against USF&G and Pomper were in the alternative (see *McCormick*, 23 Ill. App. 2d at 196), that plaintiff could recover only against one defendant and that it was to decide which, if either, was liable to plaintiff (*cf. McCormick*, 23 Ill. App. 2d at 198-99, quoting *American Transportation Co. v. U.S. Sanitary Specialities Corp.* (1954), 2 Ill. App. 2d 144, 156-57, 118 N.E.2d 793 (the question of liability, if any, may be determined between the respective defendants)). The absence of such instructions permitted the jury to return legally inconsistent verdicts which cannot stand. Because we cannot determine from the evidence before us which defendant, USF&G or Pomper, a jury would have found liable to plaintiff, we remand the cause for a new trial as to both.

■ This determination also requires us to vacate the dismissal of Pomper's counterclaim against USF&G and the directed verdict for USF&G on its counterclaim against Pomper. Because only one of them may be held liable to plaintiff if it chooses to proceed against them on the same theories as before, the trial court is instructed to dismiss the counterclaim of whichever defendant the finder of fact exonerates from liability to plaintiff.

■ We must, however, address the propriety of the counterclaims of both USF&G and Pomper as the questions raised by the parties may recur upon a retrial. Contrary to Pomper's assertion, at trial USF&G did not assert an express provision in the agency contract between

them as the basis of its counterclaim. Rather, USF&G characterized its counterclaim as for contractual indemnity in view of the fact that plaintiff's claim against USF&G sounded in contract. in Illinois, an insurer may bring an action for indemnification of losses resulting from an agent's performance of acts beyond his actual authority to bind the insurer. (*International Amphitheatre v. Vanguard* (1988), 166 Ill. App. 3d 369, 519 N.E.2d 1015; *Milwaukee Mutual Insurance Co. v. Wessels* (1983), 114 Ill. App. 3d 746, 449 N.E.2d 897; *Insurance Co. of North America v. J.L. Hubbard Co.* (1974), 23 Ill. App. 3d 254, 318 N.E.2d 289.) Moreover, general principles of agency law support USF&G's cause of action against Pomper for contractual indemnity although no provision in their agency contract expressly allowed it. See generally Restatement (Second) of Agency §§400, 401, comment *d* (1958); annot., 35 A.L.R.3d 907 (1971).

■■ We must, however, disagree with the trial court's belief that Pomper has no right of contribution against USF&G because plaintiff's causes of action sounded in contract rather than tort. This court recently held that an accounting firm's third-party complaint against a plaintiff's bank stated a cause of action for contribution because they were both subject to liability in tort arising out of the same injury to the plaintiff, their client and customer, notwithstanding that their differing duties to the plaintiff arose from their contracts with it, not tort law. (*Cirilo's, Inc. v. Gleeson, Sklar & Sawyers* (1987), 154 Ill. App. 3d 494, 507 N.E.2d 81.) Similarly here, that plaintiff sued USF&G and Pomper under nontort theories was not dispositive of whether both might also be subject to liability in tort to plaintiff for the same injury for purposes of contribution between them.

"[L]iability in tort," governing the right of contribution among tortfeasors (Ill. Rev. Stat. 1985, ch. 70, par. 302), has been construed to mean "potential" tort liability. As such, it is determined at the time of the injury to the plaintiff seeking to hold liable under some theory, not necessarily a tort theory, less than all parties who were potentially liable therefor. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 10-11, 461 N.E.2d 382.) In other words, "the Contribution Act focuses *** on the culpability of the parties rather than the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss." (*Doyle*, 101 Ill. 2d at 14.) Finally, we believe that USF&G, as well as Pomper, was clearly "potentially" liable in tort to plaintiff. See generally Restatement (Second) Of Agency §§213, 257, 265, 343, 348 (1958); 3 Am. Jur. 2d *Agency* §§280, 304, 309 (1986); 37 Am. Jur. 2d *Fraud & Deceit* §320 (1968).

■■ Pomper also asserts the trial court erred in denying a directed

verdict on and dismissing his counterclaim against Schacter. Plaintiff alleged that Schacter negligently breached his duty to obtain insurance coverage for it. Pomper's counterclaim also alleged negligence by Schacter against plaintiff. The trial court dismissed the counterclaim on the basis of the jury verdict for Schacter and against plaintiff. Since Schacter was not liable to plaintiff for negligence, the trial court properly dismissed Pomper's counterclaim for contribution against him and denied him a directed verdict thereon. See *Northrup v. Allister Construction Co.* (1987), 163 Ill. App. 3d 221, 225-26, 516 N.E.2d 586.

In its cross-appeal, plaintiff contends the trial court erred in denying it prejudgment interest. It also requests that, if we grant relief to USF&G or Pomper, we reverse the judgment for Schacter and remand the cause for a new trial as to all defendants. In light of our reversal of the judgments against USF&G and Pomper, we will not address the prejudgment interest question inasmuch as it may not arise upon retrial. Moreover, we deny the relief sought against Schacter.

■■ Plaintiff argues that our granting relief to USF&G or Pomper will impeach the verdict for Schacter. It cites *Martin v. McCarry* (1971), 2 Ill. App. 3d 650, 275 N.E.2d 897, as requiring the nullification of all verdicts if one is nullified. In *Martin*, although arguing that several verdicts against it were inconsistent with a verdict for it, a party sought reversal only of the former. Moreover, no verdicts were unaffected by the inconsistency alleged. Here, we reverse all verdicts affected by the inconsistency found. Furthermore, the verdict for Schacter was unaffected by the inconsistency of the verdicts against Pomper and USF&G. The duties toward plaintiff which Schacter allegedly violated were unrelated to the breach of warranty and apparent authority theories which plaintiff asserted against Pomper and USF&G. As such, *Martin* is unavailing to plaintiff.

■■ We find the judgment for Schacter otherwise unassailable. Plaintiff asserts the trial court erred in excluding evidence of plaintiff's loss of income. In view of Schacter's testimony that he did not discuss business interruption loss coverage with Pomper, we find no error in the trial court's ruling.

For all of the foregoing reasons, the judgments against USF&G and Pomper are reversed; the judgment for Schacter is affirmed; and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

WHITE, P.J., and RIZZI, J., concur.