FOURTH DIVISION
September 25, 2008

No. 1-07-0627

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | ) | Appeal from the |
| as Assignee of General Automation, Inc., | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 02 L 10005 |
| | ) | |
| AMERICAN NATIONAL BANK AND TRUST | ) | |
| COMPANY OF CHICAGO, | ) | Honorable |
| | ) | Daniel J. Kelley, |
| Defendant-Appellee. | ) | Judge Presiding |

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Continental Casualty Company, as assignee of General Automation, Inc. (hereinafter GAI), appeals the order of the circuit court granting summary judgment in favor of defendant, American National Bank & Trust Company of Chicago (hereinafter ANB), on plaintiff's action for breach of contract and violation of section 9 of the Illinois Fiduciary Obligations Act (760 ILCS 65/9 (West 1996)). We reverse the entry of summary judgment and remand for further proceedings thereon.

From 1992 until approximately July 1994, Lawrence Cohn was a partner with the accounting firm of Friedman Eisenstein Raemer & Schwartz, LLP (hereinafter FERS). From approximately July 1994 to May 1996, Mr. Cohn was a partner in the accounting firm of Mann Cohn Weitz, LLC (hereinafter MCW). GAI was a client of Mr. Cohn. Plaintiff was MCW's insurer.

While at FERS and MCW, Mr. Cohn embezzled $1.32 million from GAI. Specifically, while Mr. Cohn was a partner at FERS in 1992 and 1993, GAI's president and owner, Max Starr,

gave Mr. Cohn nine checks (totaling $370,000) that were signed by Mr. Starr and made payable to ANB. These checks were drawn on GAI's corporate checking account at ANB and were intended to pay GAI's payroll taxes. Mr. Cohn attached the checks to a deposit ticket made out to his own checking account and then deposited the checks into an automated teller machine at ANB. In short, ANB allowed Mr. Cohn to deposit those checks into his own account.

Mr. Cohn left FERS and became a partner at MCW in 1994. While at MCW, Mr. Cohn continued to embezzle money from GAI. Mr. Cohn took GAI checks made payable to the Internal Revenue Service (IRS) for the payment of GAI's taxes and sent them directly to the IRS for payment of his own income taxes.

GAI contends that it first discovered Mr. Cohn's embezzlements in May 1996, when agents of the IRS informed GAI that it was delinquent in its payment of payroll taxes. In December 1996, a settlement agreement was signed settling GAI's claims against FERS and MCW resulting from Mr. Cohn's embezzlements. In that settlement agreement, both FERS or its insurer and plaintiff as insurer for MCW contributed to a lump sum payment of $660,000 to fully settle all of GAI's potential claims against MCW and FERS relating to Mr. Cohn's embezzlements. In return, GAI assigned plaintiff any cause of action it may have against ANB arising out of Mr. Cohn's embezzlements. ANB did not participate in the settlement agreement.

Plaintiff, as assignee of GAI, filed a two-count complaint against ANB for breach of contract and violation of section 9 of the Illinois Fiduciary Obligations Act (760 ILCS 65/9 (West 1996)). Plaintiff sought to obtain reimbursement of GAI's losses in the amount of $370,000, resulting from the nine checks that were payable to ANB and intended to pay GAI's

No. 1-07-0627

payroll taxes, but were instead deposited in Mr. Cohn's checking account.

ANB moved to dismiss the sixth-amended complaint on the grounds that the complaint was substantially insufficient at law and was time-barred by the applicable statute of limitations. The trial court granted the motion to dismiss. On appeal, the appellate court reversed and remanded. See Continental Casualty Co. v. American National Bank & Trust Co. of Chicago, 329 Ill. App. 3d 686 (2002).

On remand, the trial court granted ANB's motion for summary judgment on the ground that the Joint Tortfeasor Contribution Act (hereinafter the Contribution Act) (740 ILCS 100/2(e) West 1996)) bars plaintiff's action because plaintiff, as a settling party, cannot seek contribution from ANB, a nonsettling party. Plaintiff now appeals that order.

Summary judgment is appropriate where the pleadings, depositions and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004). Review is de novo. Adams, 211 Ill. 2d at 43.

The Contribution Act provides in pertinent part:

"(a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the

-3-

amount paid by him in excess of his pro rata share. No tortfeasor is liable to make

contribution beyond his own pro rata share of the common liability.

(c) When a release or covenant not to sue or not to enforce judgment is

given in good faith to one or more persons liable in tort arising out of the same

injury or the same wrongful death, it does not discharge any of the other

tortfeasors from liability for the injury or wrongful death unless its terms so

provide but it reduces the recovery on any claim against the others to the extent of

any amount stated in the release or the covenant, or in the amount of the

consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is

discharged from all liability for any contribution to any other tortfeasor.

(e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is

not entitled to recover contribution from another tortfeasor whose liability is not

extinguished by the settlement." 740 ILCS 100/2 (West 1996).

The Contribution Act provides that contribution is permitted between parties who are

both subject to "liability in tort." 740 ILCS 100/2(a) (West 1996). In Joe & Dan International

Corp. v. United States Fidelity & Guaranty Co., 178 Ill. App. 3d 741 (1988), the appellate court

considered what constitutes "liability in tort" for purposes of the Contribution Act. In Joe & Dan

International, the plaintiff sued its insurance broker, the insurance company and the agent of the

insurance company for failing to provide insurance. Joe & Dan International Corp., 178 Ill. App.

3d at 743-44. The agent sought contribution against the insurance company, which the trial court

denied because the plaintiff's causes of action sounded in contract rather than tort. Joe & Dan International Corp, 178 Ill. App. 3d at 750. The appellate court reversed, holding that the theory under which the plaintiff sued the defendants was not dispositive of whether both defendants might also be subject to liability in tort to the plaintiff for the same injury for purposes of contribution between them. Joe & Dan International Corp., 178 Ill. App. 3d at 750. The appellate court held that " '[L]iability in tort,' governing the right of contribution among tortfeasors [citation], has been construed to mean 'potential' tort liability. As such, it is determined at the time of the injury to the plaintiff seeking to hold liable under some theory, not necessarily a tort theory, less than all parties who were potentially liable therefor. [Citation.] In other words, 'the Contribution Act focuses *** on the culpability of the parties rather than the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss.' [Citation.] Finally, we believe that [the insurance company] as well as [the insurance agent] was clearly 'potentially' liable in tort to plaintiff." Joe & Dan International Corp., 178 Ill. App. 3d at 750.

In the present case, ANB contends that MCW and ANB both had potential tort liability to GAI at the time ANB allowed Mr. Cohn to deposit into his own account the $370,000 in checks that were drawn on GAI's corporate checking account and intended to pay GAI's payroll taxes. Therefore, ANB contends that plaintiff (stepping into the shoes of MCW, its insured) and ANB are both "subject to liability in tort" (740 ILCS 100/2(a) (West 1996)) for purposes of the Contribution Act.

ANB further contends that plaintiff, a settling tortfeasor, sought to obtain indirect

contribution against ANB, a nonsettling tortfeasor, by obtaining an assignment of GAI's claims against ANB for breach of contract and violation of the Illinois Fiduciary Obligations Act. ANB contends that the trial court correctly granted its motion for summary judgment against plaintiff on the claims for breach of contract and violation of the Illinois Fiduciary Obligations Act because plaintiff's attempt to obtain such indirect contribution runs afoul of the Contribution Act. In support, ANB cites BHI Corp. v. Litgen Concrete Cutting & Coring Co., 214 Ill. 2d 356 (2005). In BHI Corp., a building that housed art galleries and studios was destroyed by fire. Gallery owners and artists filed complaints against the owners and managers of the building, as well as the general contractors and subcontractors hired to renovate the building. BHI Corp., 214 Ill. 2d at 358. Eventually, the plaintiffs settled all their claims against all the defendants except Litgen. BHI Corp., 214 Ill. 2d at 358. The settling defendants agreed to pay the plaintiffs $4.5 million for the release of any claims arising from the fire, and they also agreed to pay the plaintiffs an additional $4.5 million for the assignment of any claims that the plaintiffs may have against Litgen arising from the fire. BHI Corp., 214 Ill. 2d at 358-59. The settling defendants filed a complaint on the assigned claims against Litgen. BHI Corp., 214 Ill. 2d at 359. The case eventually was appealed to the supreme court.

The supreme court held that the Contribution Act "provides that a settling joint tortfeasor may not recover contribution from a nonsettling joint tortfeasor. 740 ILCS 100/2(e) (West 2002). "This rule *** fosters equitable apportionment because it prevents a settling defendant, who decides how to value its liability, from obtaining contribution from a nonsettling defendant, whose pro rata share of damages has not yet been fixed by a fact finder." BHI Corp., 214 Ill. 2d

at 365. The supreme court noted that even if the recovery sought by the settling defendants is grounded on the assignments, it still constitutes contribution from a nonsettling tortfeasor. The supreme court held "[a]n arrangement by which a settling defendant attempts to obtain indirect contribution from a nonsettling defendant by an assignment of claims violates the Contribution Act. We cannot allow the settling defendants to contract an end run around section 2(e). Accordingly, we hold that the settling defendants may not pursue the assigned claims." BHI Corp., 214 Ill. 2d at 366.

In the present case, ANB contends that MCW was a tortfeasor that settled with GAI and into the shoes of which the plaintiff (as MCW's insurer) stepped. ANB contends that plaintiff sought to obtain indirect contribution against ANB, a nonsettling tortfeasor, by obtaining an assignment of GAI's claims against ANB. ANB argues that, as in BHI Corp., such an attempt at indirect contribution violates the Contribution Act. The trial court agreed with ANB and granted its motion for summary judgment.

Plaintiff counters that for the Contribution Act to apply, ANB's and MCW's liability must arise "out of the same injury" (740 ILCS 100/2(a) (West 1996)) to GAI. Plaintiff contends there is a question of material fact as to this issue. Specifically, plaintiff argues that while Mr. Cohn was a partner at FERS in 1992 and 1993, he embezzled nine checks totaling $370,000 that were signed by the president of GAI and made payable to ANB for the purpose of ANB paying GAI's payroll taxes. ANB allowed Mr. Cohn to simply deposit those checks into his own personal account. It is the damages from that embezzlement scheme, in the amount of $370,000, which plaintiff seeks against ANB in this case. Plaintiff contends that MCW was not involved in that

scheme in any way (i.e., that MCW was not liable for GAI's $370,000 injury), because Mr. Cohn was not employed at MCW at the time he embezzled the nine checks. Thus, only ANB (and not MCW) was liable for the $370,000 injury at issue here.

Plaintiff argues that MCW's liability arose out of a separate injury to GAI pursuant to a separate embezzlement scheme perpetrated by Mr. Cohn in 1994, after Mr. Cohn left FERS to become a partner at MCW. Specifically, plaintiff contends that while a partner at MCW, Mr. Cohn was involved in a different scheme in which he embezzled money from GAI by simply taking checks of GAI made out to the IRS and submitting them to the IRS to pay his own taxes. It is this embezzlement scheme (hereinafter referred to as the IRS scheme), and the injury suffered there by GAI, for which MCW is liable. However, plaintiff contends that ANB was not involved in the IRS scheme and, thus, was not liable for the injury incurred by GAI pursuant to that scheme. Thus, only MCW (and not ANB) was liable for the injury in the IRS scheme.

In sum, plaintiff contends that GAI suffered two different injuries pursuant to two distinct embezzlement schemes perpetrated by Mr. Cohn. ANB (and not MCW) was involved in the first scheme in 1992 and 1993 to embezzle $370,000 in checks made out to ANB that were intended to pay GAI's payroll taxes; MCW (and not ANB) was involved in the second scheme to embezzle GAI checks made out to the IRS. Plaintiff contends that as ANB's and MCW's respective liability arose out of different injuries to GAI, the Contribution Act does not apply to bar plaintiff (standing in the shoes of MCW) from pursuing GAI's causes of action against ANB.

ANB counters that the plain language of the settlement agreement supports a finding that the Cohn embezzlement scheme was a single, continuous fraud from January 1992 through May

1996 that involved both MCW and ANB, that there was a single injury, and therefore that MCW and ANB were subject to the application of the Contribution Act. Our review of the settlement agreement reveals that there is no explicit statement therein regarding whether Mr. Cohn was engaged in a single scheme or fraud involving a single injury to GAI or whether he was engaged in multiple schemes involving multiple injuries to GAI. Rather, the settlement agreement notes that Mr. Cohn embezzled money from GAI while he was working for FERS and, later, while he was working for MCW; that the embezzlement involved both depositing moneys into his own personal account (which occurred while Mr. Cohn was employed by FERS from 1992 to 1993), and applying monies as estimated tax payments of Mr. Cohn rather than GAI (which occurred while Mr. Cohn was employed by MCW from 1994 to 1996); that Mr. Cohn embezzled approximately $735,000 while employed at FERS and approximately $585,000 while employed at MCW; and that GAI assigned to plaintiff all causes of actions which it may have against ANB arising out of the "embezzlements or the alleged embezzlements by Cohn as described" in the agreement.

By noting that Mr. Cohn engaged in "embezzlements" (i.e., more than one embezzlement) while working at FERS and MCW, for different amounts of money and involving different conduct, the settlement agreement raises a question of material fact regarding whether Mr. Cohn's conduct constituted separate schemes or torts involving separate injuries that may be divided into two discrete time periods. The first time period is from 1992 to 1993, when Mr. Cohn was employed by FERS and embezzled $370,000 in checks made payable to ANB for the payment of GAI's payroll taxes; and the second time period is from 1994 to 1996, when Mr.

No. 1-07-0627

Cohn was employed by MCW, and he embezzled GAI checks made payable to the IRS for the payment of GAI's taxes. As discussed above, if Mr. Cohn was engaged in two separate embezzlement schemes against GAI involving separate injuries, then ANB's and MCW's respective liability does not arise out of the same injury to GAI under the Contribution Act because ANB (and not MCW) was involved in the first embezzlement scheme and MCW (and not ANB) was involved in the second embezzlement scheme. If ANB's and MCW's respective liability does not arise out of the same injury to GAI, then the Contribution Act does not apply to bar plaintiff (standing in the shoes of MCW as MCW's insurer) from pursuing GAI's causes of action against ANB.

Since there is a question of material fact regarding whether MCW's and ANB's respective liability arises out of the same injury to GAI, and whether the Contribution Act applies to bar plaintiff's causes of action against ANB, we reverse the grant of summary judgment in favor of ANB and remand for further proceedings.

Next, ANB contends that plaintiff's complaint is time-barred. In the previous opinion in this case, the appellate court held that the three-year limitations period set forth in section 4-111 of the Uniform Commercial Code (810 ILCS 5/4-111 (West 1996)) applies. See Continental Casualty, 329 Ill. App. 3d at 699-700. The appellate court further held that the discovery rule applies to determine when the cause of action accrued. Continental Casualty, 329 Ill. App. 3d at 700-702. ANB requests that we reconsider our holding in Continental Casualty and hold that the discovery rule does not apply here. We reject ANB's request and continue to adhere to our opinion in Continental Casualty. The discovery rule applies here.

-10-

ANB argues that even if the discovery rule applies, plaintiff's claim is time-barred because plaintiff has failed to show that the action was filed within three years of the alleged injury or within three years of when GAI reasonably could have learned of the injury. ANB cites Hermitage Corp. v. Contractors Adjustment Co., 166 Ill. 2d 72, 85 (1995), in which the supreme court held that "[w]hen a plaintiff uses the discovery rule to delay commencement of the statute of limitations, the plaintiff has the burden of proving the date of discovery."

ANB's argument is not well taken, as plaintiff stated in its answers to interrogatories that GAI first discovered Mr. Cohn's embezzlements in May 1996, when the IRS informed GAI that it was delinquent in its payment of payroll taxes. Plaintiff's complaint was filed on April 30, 1997, within three years of the alleged date of discovery.

ANB also contends that GAI knew or should have known of Mr. Cohn's embezzlements in 1993, more than three years before the complaint was filed. Specifically, ANB cites the deposition testimony of Linda Williams, an ANB employee. Ms. Williams testified that in 1993, she called GAI to seek approval to pay one of the embezzled checks (check number 1340) to Mr. Cohn. Ms. Williams did not recall the name of the person she spoke to at GAI, although she did not believe that it was Mr. Cohn. Ms. Williams testified that the person she spoke with at GAI told her that, "This is a good check. It's for taxes." ANB contends that Ms. Williams' phone call should have put GAI on notice of Mr. Cohn's embezzlements. However, there is a question of material fact as to the identity of the person with whom Ms. Williams spoke at GAI and what authority that person had to give approval to pay the check. Further, even assuming that the person with whom Ms. Williams spoke was a GAI employee with authority to give approval to

pay the check, his statement to Ms. Williams that the check was "good" and was "for taxes" raises a question of material fact as to whether he thought that the check properly was going to be applied to GAI's payroll taxes. As there is a question of material fact regarding whether GAI knew of Mr. Cohn's embezzlements in 1993, summary judgment is inappropriate.

ANB also contends that GAI should have known of Mr. Cohn's embezzlements in 1993 (more than three years before the complaint was filed) because on February 10, 1993, GAI issued check number 1340, payable to ANB. This check was returned to GAI after payment with the notation "OK to pay L. Cohn" on its face. ANB contends that this notation should have put GAI on notice that Mr. Cohn was embezzling funds. However, as discussed above, Ms. Williams had called a person who she thought was a GAI employee regarding check number 1340 and she had been told that the check was "good" and that it was "for taxes." As discussed, the employee's response raises a question of material fact regarding whether GAI was under the impression, in 1993, that the funds still were going to be applied to GAI's payroll taxes. As questions of material fact exist, summary judgment is inappropriate.

ANB also contends that "long before IRS agents arrived at GAI's door," GAI should have discovered (through its accounting records) that Mr. Cohn was embezzling funds. ANB's argument is not well taken, as it relies on facts (i.e., the accounting records) not in evidence.

ANB contends that "well before the IRS came calling on GAI," Mr. Starr (GAI's president) had confronted Mr. Cohn regarding the checks and, thus, that GAI should have been on notice then regarding Mr. Cohn's embezzlements. In support, ANB cites plaintiff's pretrial memorandum, which states that "Mr. Starr had questioned Cohn on one or two occasions

regarding the accounting entries for the checks at issue." However, elsewhere in the pretrial memorandum, plaintiff states that "Cohn's response on those occasions was that the entries were made simply as accounting functions, and Mr. Starr had accepted that explanation due to his trust in Cohn as well as Cohn's superior knowledge of accountancy." Thus, a question of material fact exists as to whether Mr. Starr should have accepted Mr. Cohn's explanations regarding the accounting entries.

ANB also contends that GAI "should have taken note of the concentrated pattern of supposed 'tax payments,' which appeared to be extremely unusual. For instance, GAI issued dual payroll tax deposit checks for $40,000 each in both November 1992 and in February 1993." ANB contends that such a "concentrated pattern" of supposed tax payments should have put GAI on notice in 1993 (more than three years before the complaint was filed) that Mr. Cohn was embezzling funds. We cannot say as a matter of law that the "concentrated pattern" of supposed tax payments should have alerted GAI to Mr. Cohn's embezzlements; this is properly a question of fact for a jury to decide.

ANB contends that if GAI had better supervised Mr. Cohn's activities, or instituted "internal controls" over him, it would have been aware as early as 1993 that Mr. Cohn was embezzling funds. Again, this is a question of fact for the jury to decide.

Next, ANB contends that we should affirm the grant of summary judgment on count II of plaintiff's complaint for violation of section 9 of the Illinois Fiduciary Obligations Act because plaintiff has failed to plead or prove facts supporting its cause of action. Section 9 states:

"[I]f a fiduciary makes a deposit in a bank to his personal credit of checks drawn

by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith." (Emphasis added.) 760 ILCS 65/9 (West 1996).

A plaintiff may recover under the Illinois Fiduciary Obligations Act if he proves: (1) that the bank had actual knowledge of the fiduciary's misappropriation of the principal's funds; or (2) that the bank had knowledge of sufficient facts that its actions in paying the funds amounted to bad faith. Time Savers, Inc. v. LaSalle Bank, N.A., 371 Ill. App. 3d 759, 768 (2007).

In its sixth-amended complaint, plaintiff pleads that ANB knew Mr. Cohn was a fiduciary of GAI by virtue of his prior dealings with ANB on behalf of GAI; that Mr. Cohn was not a signatory on GAI's corporate checking account with ANB and was not authorized to sign checks for the account; that the purpose of the $370,000 in checks signed by Max Starr was to pay GAI's

-14-

payroll taxes; that ANB allowed Mr. Cohn to deposit those checks into his personal bank account; and that ANB had knowledge of sufficient facts that its action in receiving Mr. Cohn's deposits was in bad faith. In the previous opinion in this case, the appellate court held that these allegations were sufficient to plead a cause of action for violation of the Illinois Fiduciary Obligations Act. See Continental Casualty, 329 Ill. App. 3d at 704-05.

ANB argues, though, that plaintiff "has consistently pled as its only basis for Cohn being GAI's fiduciary that Cohn was GAI's 'officer' or 'comptroller.' [Plaintiff] now admits that these allegations are simply false." ANB contends that since Mr. Cohn was not GAI's fiduciary, then ANB's dealings with Mr. Cohn cannot constitute a violation of the Illinois Fiduciary Obligations Act. Accordingly, ANB argues that we should affirm the grant of summary judgment in favor of ANB. We disagree, as written discovery has established that Mr. Cohn was GAI's accountant and auditor, i.e., that Mr. Cohn was GAI's fiduciary.

ANB also contends that we should affirm the grant of summary judgment for ANB on plaintiff's Illinois Fiduciary Obligations Act claim because Linda Williams' testimony conclusively shows that ANB did not act in bad faith in allowing Mr. Cohn to deposit the $370,000 in checks into his personal bank account. ANB points to Ms. Williams' testimony that she sought approval from GAI before allowing Mr. Cohn to deposit one of the checks into his personal account. However, there were nine checks at issue here, and ANB points to no testimony that it sought approval for the deposit of the other eight checks into Mr. Cohn's personal account. Thus, questions of material fact exist as to whether ANB acted in bad faith. Accordingly, we reverse the grant of summary judgment and remand for further proceedings.

No. 1-07-0627

Next, ANB contends that the trial court erred by denying its motion for sanctions against plaintiff due to plaintiff's failure to preserve evidence. Although ANB did not file a cross-appeal from the denial of its motion for sanctions, ANB contends that we may consider the issue because plaintiff's failure to preserve evidence provides a basis for affirming the summary judgment against plaintiff. See State Automobile Mutual Insurance Co. v. Habitat Construction Co., 377 Ill. App. 3d 281, 291 (2007) (the appellate court may affirm the grant of summary judgment on any basis in the record). Specifically, we may affirm the grant of summary judgment against plaintiff if plaintiff's failure to preserve evidence was a deliberate, contumacious or unwarranted disregard of the court's authority. See Shimanovsky v. General Motors Corp., 181 Ill. 2d 112, 123 (1998); Adams v. Bath & Body Works, Inc., 358 Ill. App. 3d 387 (2005).

. ANB sought discovery of certain financial documents from around the year 1993 that ANB hoped would answer the question of when GAI reasonably should have discovered that Mr. Cohn had embezzled the payroll tax deposit checks. The documents sought were approximately 11 or 12 years old. Plaintiff, GAI, and Starr all searched for the documents, but could not find them. There is no evidence that the documents were purposely destroyed. Further, ANB has access to other documents relevant to the discovery issue, and it has the right to depose Mr. Cohn and Mr. Starr in order to seek facts regarding this issue. We cannot say that the plaintiff's failure to preserve evidence was deliberate, contumacious, or an unwarranted disregard of the court's authority; therefore, plaintiff's failure to preserve evidence cannot serve as a basis to affirm the grant of summary judgment against plaintiff.

-16-

No. 1-07-0627

For the foregoing reasons, we reverse the order granting summary judgment in favor of ANB on plaintiff's sixth-amended complaint for breach of contract and violation of section 9 of the Illinois Fiduciary Obligations Act and remand for further proceedings.

Reversed and remanded.

HALL* and MURPHY, JJ.'s concur.

No. 1-07-0627

     *Justice P. Scott Neville recused himself prior to oral arguments in this case, thus the case was heard by Justices Sheila M. O'Brien and Michael J. Murphy. Justice Shelvin Louise M. Hall was assigned as the third panel member in this appeal by the Chairman of the Executive Committee of the Illinois Appellate Court, First Judicial District. She has listened to the tape of oral arguments and read the briefs and the record in this case.